**In re Andrew J. KRON, Jr., Debtor.**

**Jack Rosenblit, Trustee, Plaintiff,**

v.

**Andrew J. Kron, Jr., Defendant.**

**Bankruptcy No. 98–25263.**

**Adversary No. 99–2031.**

United States Bankruptcy Court, D. Connecticut.

Oct. 14, 1999.

Christopher C. Noble, Noble & Associates LLC, Hartford, CT, for plaintiff.

Gregory W. Wagman, New London, CT, for defendant.

*MEMORANDUM OF DECISION*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

Jack Rosenblit, Trustee ("the plaintiff"), on February 12, 1999, filed a complaint to determine that a debt due from Andrew J. Kron, Jr., the debtor-defendant ("the debtor"), was not dischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) (debt not dischargeable if money obtained by "false pretenses, a false representation or actual fraud"). The debtor submitted an answer denying that the plaintiff was entitled to judgment, and requesting an award of attorney's fees and costs under § 523(d) (attorney fees and costs awardable if plaintiff's position "not substantially justified"). The court, on September 29, 1999, held a hearing at which the plaintiff and the debtor were the sole witnesses.

II.

The debtor, formerly in the automobile business, decided during 1996 that he would open and operate a restaurant to be known as "Kron's Place of Fine Dining", to be located in Forestville, Connecticut. On or about February 11, 1997, he applied for a $50,000 business loan from First City Bank ("the Bank"). The Bank, in May 1997, granted the loan to be secured, *inter alia,* by the restaurant's equipment ("the equipment"), then on order from the seller, Mercury Restaurant Equipment ("Mercury"). The Bank properly perfected its security interest.

In September 1997, the debtor possessed insufficient funds to complete the $35,000 equipment purchase. The principal of Mercury advised the debtor to bor-

row the approximately $20,000 needed to complete the equipment purchase from the plaintiff, a person with whom Mercury had done business for many years. The plaintiff is in the business of making business loans and second mortgage loans. The debtor agreed and the Mercury principal contacted the plaintiff to make arrangements for the loan. The plaintiff and the debtor, shortly thereafter, first met for a brief meeting, at which the plaintiff agreed to make a loan of $23,700 (including a prepaid finance charge of $2,370) to the debtor to be amortized monthly over a three-year term at 24 percent interest, with the loan to be secured by a purchase money security interest in the equipment. The debtor understood the loan to be a second lien on the equipment, since Mercury was well aware that the Bank had already filed a lien covering the debtor's present and after-acquired equipment. The plaintiff testified that he believed he told the debtor that the lien had to be a first lien.[1]

The debtor, on September 25, 1997, went to the office of Mark Rosenblit, Esq., the plaintiff's attorney as well as the plaintiff's son, to close the loan. The debtor testified that the closing lasted only ten minutes, during which Attorney Rosenblit presented to him and he signed a $23,700 note and security agreement, a disbursement statement, a Form UCC–1 financing statement and a "commercial loan affidavit"("the affidavit"). Essentially all of the net loan proceeds were made payable directly to Mercury. The debtor stated he did not carefully read any of the documents Attorney Rosenblit submitted for signature and none were explained to him. The affidavit included a statement that "No other security interest lien or restraining order presently encumbers the collateral." (Exh. B). The plaintiff, who did not attend the closing, had decided not to have a U.C.C. search made and was unaware of the Bank's lien at the time of the closing. The financing statement was filed on September 26, 1997 and Mercury released the equipment to the debtor.

Within seven months of its opening in December 1997 the restaurant failed, with the debtor having made only two payments on the plaintiff's note. The debtor and his spouse filed a joint Chapter 7 bankruptcy petition on November 17, 1998. The Bank, after receiving relief from stay, foreclosed on the equipment, with no proceeds available for the plaintiff. The plaintiff thereafter commenced the instant action against the debtor, alleging as fraud the debtor's failure to disclose to the plaintiff the existence of the Bank's prior lien.

### III.

The principles applying to a proceeding under § 523(a)(2)(A) are well settled:

Under § 523(a)(2)(A), a debt may be determined nondischargeable based on fraud where the creditor proves that:(1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made. The level of reliance is justifiable reliance. The burden of proof on the creditor is to prove each element of the statute by a preponderance of the evidence. Further, exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code. To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which

---

1.  Both the debtor and the plaintiff have conceded, without discussion, that the Bank's security interest was superior to that of the plaintiff. Neither party has raised the question of whether, as a purchase money security interest defined in Conn.Gen.Stat. § 42a–9–107(b), the plaintiff's security interest may have, under Conn.Gen.Stat. § 42a–9–312(4), had priority over the Bank's.

may exist without imputation of bad faith or immorality) is insufficient. *AT & T Universal Card Services Corp. v. Williams, (In re Williams)*, 214 B.R. 433, 435 (Bankr.D.Conn.1997). (Internal quotation marks and citations omitted.)

## IV.

The inability of the plaintiff to prove every element of § 523(a)(2)(A) by a preponderance of the evidence, and the narrow construction applied to exceptions to dischargeability, prescribe a ruling in favor of the debtor. Both the plaintiff and the debtor sounded plausible and credible at trial in presenting their testimony. The debtor understood the loan transaction to be a second mortgage transaction.[2] The plaintiff understood he would receive a first lien on the equipment.[3]

The plaintiff, in his pre-trial submissions, had listed the Mercury principal as a potential witness, but at trial never called such witness to testify. This witness might have confirmed, or refuted, the debtor's testimony concerning what Mercury knew. In addition, the plaintiff failed to call Attorney Rosenblit as a witness to testify as to what, if anything, he informed the debtor about the affidavit which the debtor signed in Attorney Rosenblit's presence. While not of controlling significance, the plaintiff's failure to call these witnesses is of some import in light of the plaintiff's burden of proof.

## V.

### CONCLUSION

The court concludes that the plaintiff has not met his burden of proof that (1) the debtor, at the time he made the false representation in the affidavit, realized he was making a false representation and (2) that the debtor made such representation with an intention and purpose of deceiving the plaintiff. Judgment will enter that the debtor's debt to the plaintiff is discharged.[4] The debtor's request for attorney's fees and costs is denied.

---

**2.** The interest rate which the plaintiff charged for the loan would do nothing to disabuse the debtor of this belief. A $23,700 loan at 24 percent interest, payable monthly over three years, with a $2,370 finance charge, equates to an annual interest rate of 32.07 percent. The interest rate on the Bank loan was 10.5 percent.

**3.** *See supra* note 1.

**4.** The court, on March 3, 1999, granted the debtor an uncontested discharge.