**In re Magdalena MURRELL, Debtor.**

**Martin Simon, Plaintiff,**

v.

**Magdalena Murrell, Defendant.**

**Bankruptcy No. 97–31320.
Adversary No. 97–3198.**

United States Bankruptcy Court,
D. Connecticut.

Jan. 18, 2001.

Christine M. Bazata, Law Offices of Todd H. Lampert, New Canaan, CT, for Plaintiff.

John B. Oestreicher, Shea & Oestreicher, North Branford, CT, for Defendant.

## MEMORANDUM OF DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(15)

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In this adversary proceeding the Plaintiff—the former spouse of the Debtor–Defendant—seeks a determination pursuant to Bankruptcy Code Section 523(a)(15) of the dischargeability of the Debtor's obligations under the hold-harmless provisions of their divorce decree. For the reasons stated more fully herein, judgment shall enter in favor of the Plaintiff.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b), and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. § 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(*l* ).

## III. PROCEDURAL HISTORY

On April 4, 1997, Magdalena Murrell (hereafter, "Defendant" or "Debtor–Defendant"), commenced in this Court a voluntary Chapter 7 bankruptcy case through the filing of a petition pursuant to 11 U.S.C. § 301. On August 28, 1997, Martin Simon (hereafter, "Plaintiff") commenced the instant adversary proceeding through the filing of a Complaint to Determine Dischargeability of Debts (hereafter, the "Complaint").[1]

Trial on the Complaint was conducted on September 14, 1998, at which time the Court heard the testimony of the Defendant, the Plaintiff and Ms. Lena Lorenzi— the current wife of the Plaintiff. In the course of testimony the Court admitted as Exhibits, without objection, the respective financial affidavits of the parties, reflecting, in part, their financial condition at the time of trial. The Court has also accepted as true and accurate the admitted factual allegations of the Complaint, including Exhibit A thereto—a transcript order of the Connecticut Superior Court dissolving the marriage of the parties. The Court received the arguments of counsel after trial, and then took the matter under advisement.

## IV. FACTUAL BACKGROUND

By order dated December 4, 1996 (hereafter, the "Decree"), the parties' marriage was dissolved by the Connecticut Superior Court for the Judicial District of New Haven (Pittman, J.). As part of the Decree, the Defendant was ordered to pay certain obligations to third-party creditors (hereafter, the "Assigned Debts") and to hold the Plaintiff harmless as to those obligations (hereafter, the "Hold Harmless Obligation"). It is the dischargeability of the Hold Harmless Obligation which is at issue in this proceeding.

In the Decree Judge Pittman found, *inter alia*, that there was "not a disparate

earning capacity between the parties", and this Court so finds as well. Each of the parties shares a household with another individual—the Plaintiff is married to Ms. Lorenzi; the Defendant has co-habited and shared expenses with one Anthony Soto since November, 1996. The Plaintiff and Defendant are economically interdependent with Ms. Lorenzi and Mr. Soto, respectively. The Defendant has no legal dependents.

## V. DISCUSSION

Section 523(a) of the Bankruptcy Code excepts from an individual's bankruptcy discharge certain classes of debts. Since the inception of the Bankruptcy Code, Section 523(a)(5) has deemed as non-dischargeable debts which are in the nature of alimony and support. By 1994 though, Congress had become convinced that certain non-alimony or non-support obligations created in the context of divorce should also be non-dischargeable, provided the debtor could afford to honor those debts and the balance of hardship tilted in the creditor's direction. From this sentiment emerged "new" Section 523(a)(15) as one element of the Bankruptcy Reform Act of 1994. Section 523(a)(15) provides in relevant part that:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> * * * *
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-

1. On July 8, 1997, Martin Simon filed a Motion for Extension of Time to File Complaint Objecting to Discharge or to Determine Dischargeability, which the Court granted, extending the bar date for such filing to August 29, 1997.

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a... former spouse... of the debtor.

11 U.S.C. § 523(a) (1997).

■ As determined and announced by the Court at the time of trial, the burden of proof under Section 523(a)(15) is allocated as follows. The Creditor–Plaintiff bears the initial burden of proving the existence of a debt that was "incurred by the debtor in the course of a divorce or... in connection with a... divorce decree". The burden then shifts to the Debtor–Defendant to prove the applicability of either "safe harbor" provided by subparagraph (A) or (B) of Section 523(a)(15). *See, e.g., In re Crosswhite*, 148 F.3d 879, 884–85 (7th Cir.1998) ("[u]pon consideration of the statutory language, the structure of the statute, the legislative history and the case law, we conclude that there is a clear shift in the burden of proof under § 523(a)(15)(4)27 .... [O]nce the creditor's initial proof is made, the debt is excepted from discharge and the debtor is responsible for the debt unless either of the two exceptions, subpart (A), the 'ability to pay' test, or (B), the 'detriment' test, can be proven by the debtor.").

■ The Plaintiff has readily met his burden of production. The Hold Harmless Obligation is a contingent debt owing from the Defendant to the Plaintiff. That debt was created by the Superior Court's Decree in connection with the parties' divorce. Further, it is uncontested that the Hold Harmless Obligation is *not* a debt of the type described in Section 523(a)(5). Accordingly, the Hold Harmless Obligation is non-dischargeable unless either subparagraph (A) or (B) of Section 523(a)(15) is resolved in the Debtor–Defendant's favor.

In assessing whether the Defendant has met her burden of proving one of the exceptions to Section 523(a)(15)'s general rule of nondischargeability, it is important to appreciate fully the nature of the subject debt. The Hold Harmless Obligation is a *contingent* debt, in that it becomes fixed only at such time as an Assigned Debt creditor begins collection activity against the *Plaintiff.* It is also important to note in assessing "ability to pay" in subparagraph (A), and weighing "benefit" vs. "detrimental consequence" in subparagraph (B) that the relevant "payment" schedule for the Hold Harmless Obligation is dictated by the amount and manner of collection permitted to judgment creditors under law. In other words, in analyzing the parties' financial circumstances, this Court should not only consider the consensual payment schedules existing between the Debtor–Defendant and third-party creditors under the Assigned Debts, but also, and perhaps exclusively, the execution schedule under which the Creditor–Plaintiff might collect any judgment obtained on the Hold Harmless Obligation. The amount of that execution would in all likelihood be limited by an Instalment Payment Order entered by the Connecticut Superior Court pursuant to C.G.S. § 52–356d. While it is impossible for this Court to know at this time the amount of any future Instalment Payment Order, this Court trusts that the Superior Court would set that amount at a figure capable of compliance, and which fairly balances the interests of the parties.

In light of the foregoing, and considering all of the myriad of facts introduced at trial, this Court concludes that the Debtor–Defendant has wholly failed to meet her burden of proving either (i) that she "does not have the ability to pay" the Hold Harmless Obligation within the meaning of Section 523(a)(15)(A); or (ii) that discharging the Hold Harmless Obligation "would result in a benefit to [her]... that out-

weighs the detrimental consequences to... [the Plaintiff]" within the meaning of Section 523(a)(15)(B).

## A. Inability to Pay.

In determining that the Debtor–Defendant has not met her burden of proving an inability to pay the Hold Harmless Obligation, the Court has given weight to the following factors, *inter alia:*

1. The Defendant is a long-tenured employee of the State of Connecticut, earning an annualized income of approximately $45,000.00.

2. Approximately one-half of the Defendant's living expenses are borne by her live-in companion, Mr. Soto; and the Defendant was unable or unwilling to testify as to the total income of Mr. Soto.[2]

3. The Defendant has available to her certain non-exempt saleable assets (*e.g.*, an oriental rug).

## B. Benefit/Detrimental Consequence Balance

In determining that the Debtor–Defendant has not met her burden of proving that a discharge of the Hold Harmless Obligation would create for her a benefit outweighing the detrimental consequences to the Plaintiff, the Court has given weight to the following factors, *inter alia:*

1. The Plaintiff and Defendant have similar incomes.

2. At the time of trial, the Plaintiff's spouse was earning an annualized income of approximately $19,000.00, without credible prospects for substantial increase in the near term. She also requires substantial and expensive dental work which has been deferred due to her financial circumstances.

3. Approximately one-half of the Defendant's living expenses are borne by Mr. Soto, and the Defendant was unable or unwilling to testify as to the amount of his income or other resources.[3]

4. The Defendant has available to her certain non-exempt saleable assets (*e.g.*, an oriental rug).

5. The Defendant is enrolled in a voluntary deferred compensation plan to which she contributes $60.00 weekly.

6. The Plaintiff owns an interest in the real property constituting his home; which, as a practical matter, if containing non-exempt equity, is at risk of being foreclosed to satisfy a judgment by an Assigned Debt creditor.[4]

7. The Defendant does not own an interest in the real property which constitutes her home.

## VI. CONCLUSION

Based upon the foregoing analysis, judgment shall enter in this adversary proceeding, in favor of the Plaintiff, declaring the Hold Harmless Obligation non-dischargeable in the instant bankruptcy case.

---

2. Akin to additional debtor income, contributions to a debtor's living expenses by an economically interdependent co-habitant are relevant to an assessment of the debtor's "ability to pay" under Section 523(a)(15)(A). *Cf. Crosswhite*, 148 F.3d at 889. Further, even non-contributed co-habitant income may be taken into account where the debtor and the co-habitant are economically interdependent. *See Short v. Short (In re Short)*, 232 F.3d 1018, 1023–24 (9th Cir.2000).

3. An economically interdependent co-habitant's contributions to a debtor's living expenses are relevant to an assessment of the equitable balance under Section 523(a)(15)(B). *Crosswhite*, 148 F.3d at 889. Even a co-habitant's non-contributed income may also be an appropriate factor in evaluating the parties' equities under Section 523(a)(15)(B) where the debtor and the co-habitant are economically interdependent. *Cf. Short, supra*, at 1023–24.

4. Even in the absence of non-exempt equity, the Plaintiff's homestead might be encumbered by an Assigned Debt creditor.