In re Rosa M. PIERCE, Debtor.

Dennis J. Pierce, Plaintiff,

v.

Rosa M. Pierce, Defendant.

Bankruptcy No. 03–32914(LMW).
Adversary No. 03–3124.

United States Bankruptcy Court,
D. Connecticut.

March 14, 2005.

Bruce A. Chamberlain, Esq., New London, CT, for Plaintiff.

Beth A. Steele, Esq., Donald J. DiFrancesca, Esq., DiFrancesca & Steele, P.C., Norwich, CT, for Defendant/Debtor.

### MEMORANDUM OF PARTIAL DECISION

LORRAINE M. WEIL, Bankruptcy Judge.

The matter before the court is the above-referenced plaintiff's (the "Plaintiff") complaint (A.P. Doc. I.D. No. 1, the "Complaint") [1] seeking a determination that a certain alleged debt owing to the Plaintiff was not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(5) and/or 523(a)(15). This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 as a core proceeding pursuant to 28 U.S.C. § 157(b). This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### I. PROCEDURAL BACKGROUND

#### A. The Chapter 7 Case

The above-referenced debtor/defendant (the "Debtor") commenced this case by voluntary petition (on its face dated May 27, 2003) filed on June 4, 2003 (the "Petition Date"). Together with that petition

---

1. Citations herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___." Citations herein to the docket of this chapter 7 case are in the following form: "Case Doc. I.D. No. ___."

the Debtor filed a complete set of schedules and a statement of financial affairs (included in Case Doc. I.D. No. 1, collectively, the "Schedules"). Schedule A (Real Property) lists a fee simple interest in the Debtor's residence at 200 Yantic Lane, Norwich, Connecticut (the "Real Property") with a claimed value of $130,000.00. Schedule B (Personal Property) lists personal property assets with an aggregate claimed value of $86,137.77, including: a certain "Connecticut Carpenters Annuity Fund" (the "Annuity") with a claimed value of $79,147.77; a certain "Retirement Plan" with a stated value of $1,000.00; and the Debtor's right to receive $265.00/week in alimony from the Plaintiff.[2] Schedule C (Property Claimed as Exempt) claims various exemptions under Bankruptcy Code § 522(b)(1) including: an exemption in respect of the Real Property (such exemption being valued by the Debtor at $17,000.00); the entire respective values of the Annuity and the "Retirement Plan;" and the Debtor's right to receive alimony from the Plaintiff.

Schedule D (Creditors Holding Secured Claims) lists mortgagees and/or lienholders with claims in the aggregate amount of $123,507.73, substantially all of which relates to the Real Property. Schedule E (Creditors Holding Unsecured Priority Claims) lists no such claims. Schedule F (Creditors Holding Unsecured Nonpriority Claims) lists such claims in the aggregate amount of $40,029.60. Schedule H (Codebtors) lists the Plaintiff as a codebtor with respect to certain debts listed on Schedules D and F. The Plaintiff is not listed as a creditor in the Schedules, nor is he listed on the original mailing matrix in this case. (*See* Schedules; Case Doc. I.D.

No. 1 (Matrix).) As a result, the Plaintiff did not receive formal notice of the commencement of this case by service of a notice on June 4, 2003. (*See* Case Doc. I.D. No. 3 (Certificate of Service).) On July 3, 2003, the Debtor filed an amended Schedule F (Case Doc. I.D. No. 5, the "Amended Schedule") which, *inter alia*, listed the Plaintiff as a creditor with a noncontingent, liquidated and undisputed general unsecured claim in the amount of $112,992.63 for "Misc" [sic], (Amended Schedule F).

Schedule I (Current Income of Individual Debtor(s)) and Schedule J (Current Expenditures of Individual Debtor) assert the following relevant facts as of the Petition Date. The Debtor claimed two dependents: a son eighteen years of age; and a son twenty years of age. The Debtor was (and for three years had been) employed as a medical records clerk at UCONN Health Partners in East Hartford. The Debtor's monthly income (net of payroll deductions but including both wages and alimony) was $1,670.00.[3] The Debtor's monthly expenditures were $1,828.19. The Debtor's Statement of Financial Affairs asserts the following yearly income: 2003 (to the Petition Date)—$4,200.00; 2002—$26,000.00; and 2001—$25,000.00.

On July 21, 2003, the chapter 7 trustee filed a report of no distribution. (*See* Case Doc. I.D. No. 6.) On August 20, 2003, the Plaintiff filed a motion for relief from stay to seek from the Connecticut Superior Court modification of the Debtor's alimony and clarification of any property settlement provided for in the Divorce Judgment (as hereafter defined). (*See* Case Doc. I.D. No. 7.) That motion later was

---

**2.** As explained below, the Plaintiff is the Debtor's former husband.

**3.** That figure may be understated because Schedule I shows monthly alimony as "$265.00" when, as explained below, that is a weekly figure. Thus, the Debtor's monthly income (as stated on Schedule I) may be closer to $2,465.00.

denied for failure to prosecute. (*See* Case Doc. I.D. No. 15.) The Debtor received her chapter 7 discharge by order entered on September 24, 2003. (*See* Case Doc. I.D. No. 11.)

## B. *The Adversary Proceeding*

This adversary proceeding was commenced by the timely-filed Complaint on August 20, 2003. The Complaint is in two counts: the "First Count"[4] seeks a determination that the alleged debt owed to the Plaintiff was not discharged in this chapter 7 case pursuant to Bankruptcy Code §§ 523(a)(5) and 523(a)(15); the Second Count (the "Second Count") seeks a determination that such debt was not discharged pursuant to Bankruptcy Code § 523(a)(2).

The Debtor filed an answer to the Complaint on September 16, 2003. (*See* A.P. Doc. I.D. No. 4.) The court entered a pretrial order in respect of the Complaint on October 24, 2003. (*See* A.P. Doc. I.D. No. 8.) Pursuant to that order, the Debtor filed a list of witnesses and exhibits. (*See* A.P. Doc. I.D. Nos. 9, 10.) The Plaintiff did not file any such lists.[5]

A trial (the "Trial") on the Complaint was held on March 23, 2004. At the Trial, the Plaintiff produced the following witnesses: Donald Di Francesca, Esq., the Debtor's divorce attorney; the Plaintiff; and the Debtor. The Plaintiff attempted to introduce certain documentary exhibits as evidence but was not permitted to do so because such exhibits admittedly were not listed on the Plaintiff's Lists. At the Trial, the Debtor and Attorney DiFrancesca tes-

tified on the Debtor's behalf and produced the following trial exhibits (admitted pursuant to stipulation): Judgment of Divorce dated January 30, 2002 ("Exhibit A" or the "Divorce Judgment"); and a transcript of proceedings in the Family Court (as hereafter defined) in respect of the Divorce Judgment ("Exhibit B" or the "Divorce Transcript"). At the conclusion of the Plaintiff's case in chief, the court announced its preliminary determination that the Plaintiff had failed to make out a prima facie case with respect to the Second Count. At the conclusion of the Trial, the court took the entire matter under advisement subject to post-trial briefing.

On July 2, 2004, this court entered that certain Order Requesting Further Optional Briefing (A.P. Doc. I.D. No. 14, the "Optional Briefing Order") giving the parties the opportunity to brief (on an optional basis) certain issues set forth in the order. Briefing (including optional briefing) is complete and the court now renders this partial decision on the Complaint.

## II. *FACTS*[6]

The Plaintiff and the Debtor were married on July 11, 1980; the marriage produced two children (including the son who was eighteen years of age as of the Petition Date). Marital dissolution proceedings were commenced by the Debtor in the Connecticut Superior Court for the Judicial District of New London at Norwich (the "Family Court") against the Plaintiff on or about January 4, 2000. As noted above, the Family Court issued the Di-

---

4. There is no subheading in the Complaint for a "First Count."

5. At the Trial (as hereafter defined), it was alleged that the Plaintiff nevertheless served such list(s) on counsel for the Debtor. Any such lists are hereafter referred to as the "Plaintiff's Lists."

6. The facts set forth in this section (and elsewhere in this opinion) are taken from the Trial record and the chapter 7 case file. A transcript (the "Transcript") of the Trial appears in the adversary proceeding docket as Doc. I.D. No. 11.

vorce Judgment on or about January 30, 2002. The Divorce Judgment provided in relevant part:

> AND IT IS FURTHER ORDERED, that the parties have joint debts [the "Joint Debts"[7]] in the approximate amount of twenty-four thousand ($24,-000.00) dollars, which shall be paid as set forth on the attached sheet.
>
> AND IT IS FURTHER ORDERED, that the ... [Plaintiff] shall retain his retirement/pension plan [the "Plaintiff's Pension"] through Industrial Construction Company and the ... [Debtor] shall waive any claim to the retirement/pension account.
>
> . . . . .
>
> AND IT IS FURTHER ORDERED, that the ... [Debtor] shall receive the ... [Annuity] (valued as of 01–18–02 at $79,147.77) and shall within thirty (30) days of the same pay all ... [the Joint Debts]. Until said time, the parties shall be equally responsible for said debts and each shall indemnify and hold the other harmless for one-half (1/2) of the obligations thereto. Contributions on account after 01–18–02 shall belong to the ... Plaintiff. Taxes up to twenty (20%) percent shall be ... [the Debtor's] responsibility. Any tax or penalty in excess of twenty (20%) percent shall be shared one-half (1/2) each.
>
> AND IT IS FURTHER ORDERED, that the ... [Annuity] shall be transferred by assignment or ... [Qualified Domestic Relations Order] with funds available 05–15–03 when ... [the Plain-tiff] reaches age 50. The Court retains jurisdiction to effectuate this transfer. If the ... [Debtor] can receive those funds prior to 05–15–03 with no penalty, she can do so.

(Exhibit A at 3.) In connection with the Divorce Judgment, the Family Court advised the Debtor as follows:

> [Y]our husband has ... agreed that you will receive ... [the Annuity]. . . . That will be yours. . . . However, I want you to be also aware, and your husband is aware that from ... [the A]nnuity you are agreeing to pay the ... [Joint Debts].

(Divorce Transcript at 11, line 21—12, line 3.) Sometime subsequent to entry of the Divorce Judgment but prior to the Petition Date, the Debtor obtained an increase in her weekly alimony from $200/week to $265/week.

Prior to May 13, 2003, the Plaintiff and the Debtor executed a form of "Qualified Domestic Relations Order."[8] The Debtor did not advise the Plaintiff that she was contemplating the commencement of this case at that time, notwithstanding that she already was consulting with her attorney on that subject. The executed form of "Qualified Domestic Relations Order" was forwarded to the Family Court and was entered as an order (the "QDRO") of the Family Court on or about May 13, 2003.

As noted above, the Debtor commenced this chapter 7 case on June 4, 2003; however, the chapter 7 petition was executed by the Debtor on May 27, 2003. Also as

---

7. The "attached sheet" to the Divorce Judgment appears to show a subtotal for the Joint Debts of $24,096.00 and a total for such debts of $30,250.00. Some (but perhaps not all) of the Joint Debts appear on the Schedules. The amount of some of the Joint Debts may have been subject to adjustment based upon effective insurance coverage. (*See* Divorce Transcript at 18, lines 3–17.)

8. A "Qualified Domestic Relations Order" was necessary to effectuate the transfer of the Annuity to the Debtor. What constitutes a "Qualified Domestic Relations Order" is set forth at 26 U.S.C. § 414(p).

noted above, the Annuity was listed as an asset by the Debtor on the Schedules which were filed with the chapter 7 petition. Accordingly, the court infers that the Annuity was effectively transferred to the Debtor pursuant to the QDRO prepetition.

As of the Trial, the Debtor had failed to pay the Joint Debts. As a codebtor, the Plaintiff has been garnished with respect to the First USA Visa debt (listed as a Joint Debt on Exhibit A); as of the Trial he had paid $1,925.00 pursuant to that garnishment. (Transcript at 21, 23.) As of the Trial, the Plaintiff also had paid $4,000 on the Ford Motor Credit debt (listed as a Joint Debt on Exhibit A). (Transcript at 25.) The Debtor is a Portugese immigrant who is about fifty-six years old. The Plaintiff is about fifty-one years old.

## III. ANALYSIS

### A. Bankruptcy Code § 523(a)(2)(A) (Second Count)

As noted above, at the close of the Plaintiff's case, the court preliminarily determined that the Plaintiff had failed to make out a prima facie case with respect to the Second Count. For the reasons which follow, the court confirms its prior determination.

#### 1. Legal Standards

■ Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt—for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud ...." 11 U.S.C.A. § 523(a)(2) (West 2005). To establish nondischargeability under Bankruptcy Code § 523(a)(2)(A), the Plaintiff must prove the following: (1) the Debtor made representations; (2) knowing them to be false; (3) with the intent and purpose of deceiving the Plaintiff; (4) upon which representations the Plaintiff actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by the Plaintiff. See AT & T Universal Card Services v. Mercer (In re Mercer), 246 F.3d 391, 403 (5th Cir.2001) (en banc); Rosenblit v. Kron (In re Kron), 240 B.R. 164, 165 (Bankr.D.Conn. 1999) (Krechevsky, J.). The Plaintiff must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the fresh start policy of bankruptcy. Kron, supra at 165. Furthermore, the "debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." Id. at 165–66.

#### 2. Application of Law to Fact

■ For purposes of Bankruptcy Code § 523(a)(2) the court will assume (but not decide) that the Debtor owes the Plaintiff under the Divorce Judgment the obligation to pay the Joint Debts (or to indemnify him for her failure to do so) and that the foregoing constitutes a "debt" (the "Alleged Debt") within the purview of Section 523(a)(2)(A). The court further assumes that the Alleged Debt was incurred or "renewed" (albeit in contingent form) no earlier than when the Divorce Judgment was entered. Assuming that the Alleged Debt was incurred or "renewed" when the Divorce Judgment was entered, the only evidence before the court is testimony that, as of such time (i.e., on or about January 30, 2002), the Debtor intended to pay the Joint Debts and was not contemplating bankruptcy. (See Transcript at 9

(testimony of Attorney DiFrancesca); Transcript at 38 (testimony of the Debtor).) Accordingly, there is no evidence of the Debtor's fraudulent intent when the Alleged Debt was incurred or "renewed" (assuming such took place when the Divorce Judgment was entered).

Moreover, even if the relevant time is moved to the time of execution of the QDRO, the result is no different. That is because the record is too ambiguous to persuade the court as to the Debtor's fraudulent intent as of such time (*i.e.*, an intent not to pay the Joint Debts at the time she executed the QDRO and/or the time such order was entered). It is true that the Debtor signed her chapter 7 petition only (approximately) two weeks after she signed the QDRO and had been consulting with her bankruptcy attorney at the time of her execution of the QDRO. However, the Debtor did not list the Plaintiff as a creditor in the Schedules which were filed with her petition and did not so list him until she filed the Amended Schedule F about a month later. That fact is susceptible of two interpretations. On the one hand, it could be interpreted as evidence of the Debtor's intent to keep the Plaintiff in the dark about her bankruptcy a while longer. On the other hand, it could be interpreted as evidence that the Debtor first decided about a month into her bankruptcy to attempt to discharge the Alleged Debt. On this record, the court is not persuaded of the Debtor's fraudulent intent as of the date of her execution of the QDRO (or its entry by the Family Court).

For all of the foregoing reasons, the court concludes that the Second Count must be dismissed.

### B. *11 U.S.C. § 523(a)(5)*

■ The Complaint seeks to have the Alleged Debt declared not discharged pursuant to Bankruptcy Code §§ 523(a)(5) and 523(a)(15). Section 523(a) provides in relevant part:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> . . . . .

> (5) to a ... former spouse ... of the debtor, for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce decree ..., but not to the extent that

> . . . . .

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ....

11 U.S.C.A. § 523(a) (West 2005). Under appropriate circumstances, payments to third parties may nevertheless constitute alimony or support within the purview of Section 523(a)(5). *Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2d Cir.1981). "[I]t is not always easy to distinguish alimony, maintenance and support claims, covered by section 523(a)(5), from property settlement claims, which are not covered by section 523(a)(5) but which may be nondischargeable under section 523(a)(15)." 4 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.11[6], at 523–82 (15th ed. rev.2004).

■ In this case, it is not difficult for the court to determine that the Alleged Debt is in the nature of a property settlement rather than an alimony or support payment from the Debtor to the Plaintiff. That is because it is clear from the record that the transfer of the Annuity to the Debtor (and her obligation to pay the Joint Debts from the Annuity) was a *quid pro quo* for the Debtor's waiver of rights with respect to the Plaintiff's Pension. (*See* Transcript at 49, line 23—50, line 3) (testi-

mony of Attorney DiFrancesca).[9] The Plaintiff's testimony that he paid the Debtor more alimony as a consequence of the Alleged Debt is not inconsistent with the characterization of the Alleged Debt as a property settlement. That is because it is not uncommon to make a favorable (upward) adjustment of alimony payable to a former spouse in light of a property settlement that is less favorable to that spouse. Accordingly, the court concludes that the Alleged Debt is not within the purview of Section 523(a)(5).

### C. *11 U.S.C. § 523(a)(15) ("First Count")*

#### 1. *Legal Standards*

Section 523(a) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(15) not of a kind described in paragraph (5) that is incurred by the debtor in the course of a divorce ... or in connection with a ... divorce decree ... *unless*—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... *or*

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse ... of the debtor ....

11 U.S.C.A. § 523(a) (West 2005) (emphasis added). Relevant legislative history behind Section 523(a)(15) states as follows:

The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that are owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. *It is only the obligation owed to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless— which is within the scope of this section.* See *In re MacDonald,* 69 B.R. 259, 278 (Bankr.D.N.J.1986).

140 Cong. Rec. H10752–01, at *H10770 (Oct. 4, 1994) (emphasis added).

There is disagreement among the courts as to whether the requisite "hold harmless" obligation must be expressly stated in the agreement or decree or whether it can be implied from the underlying obligation to pay the third parties. *Compare Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 205 (6th Cir. BAP 1998) (express provision not required); *Ruhlen v. Montgomery (In re Montgomery),* 310 B.R. 169, 180 (Bankr.C.D.Cal. 2004) (same); *Woszczyna v. Woszczyna (In re Woszczyna),* 295 B.R. 425, 429 (Bankr.D.Conn.2003) (Krechevsky, J.) (same); *Crawford v. Osborne (In re Osborne),* 262 B.R. 435, 442 (Bankr. E.D.Tenn.2001) (same); *Johnston v. Henson (In re Henson),* 197 B.R. 299, 303 (Bankr.E.D.Ark.1996) (same) *with McKinnis v. McKinnis (In re McKinnis),* 287 B.R. 245, 257 (Bankr.E.D.Mo.2002) (express provision required); *Belcher v. Owens (In re Owens),* 191 B.R. 669, 674

***

**9.** The parties appear to agree that neither party had assets at the time of the Divorce Judgment from which the Joint Debts could be ·paid. Accordingly, as stated in the Divorce Transcript (quoted above), their agreement was that the Annuity would be

transferred to the Debtor and that she would access it to the extent necessary to pay the Joint Debts, with the balance remaining her sole property. It is unclear from the record whether such accessing by the Debtor would trigger penalties.

(Bankr.E.D.Ky.1996) (same); *Barstow v. Finaly (In re Finaly)*, 190 B.R. 312, 315 (Bankr.S.D.Ohio 1995) (same); *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo.1995) (same). *See also Gemza v. Rogan (In re Rogan)*, 283 B.R. 643, 647–48 (Bankr.D.Conn.2002) (Dabrowski, J.).[10]

The *standard* of proof under Section 523(a)(15), as with other Section 523(a) dischargeability exceptions, is a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. [279,] 291[, 111 S.Ct. 654, 112 L.Ed.2d 755] .... However, the *allocation* of the *burden* of proof under Section 523(a)(15) is somewhat unique. A plaintiff/former spouse bears the initial burden of demonstrating (i) that there is a "debt" owed to ... [him]; (ii) that such debt was "incurred by the debtor in the course of à divorce or separation or in connection with a separation agreement [or] divorce decree"; and (iii) that such obligation is "not of the kind described in ... [Code Section 523(a)](5)." Upon a successful initial showing by the plaintiff, the burden then shifts to the debtor-defendant to prove either one of the dischargeability "safe harbors" provided by subparagraph (A) and (B) of Section 523(a)(15). *E.g., Matter of Crosswhite*, 148 F.3d 879 (7th Cir.1998); *Simon v. Murrell (In re Murrell)*, 257 B.R. 386, 389 (Bankr. D.Conn.2001). In this manner the ultimate burden of persuasion may lie with the debtor-defendant.

*Rogan*, 283 B.R. at 647.

"[A]bility to pay" under subsection (A) of Section 523(a)(15) is not a static concept, compelling its assessment at a fixed point in time such as the bankruptcy petition date, the time of the trial, etc. Rather, it is a fluid concept which permits the Court to consider a debtor's prior employment, future employment opportunities, health status, etc. to determine whether the future wealth and earning capacity of that debtor will be sufficient to allow for payment of the subject debt. *See, e.g., Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (6th Cir. BAP 1998). To borrow an analogy, unlike the "rear view mirror" analysis which may apply to contests under Section 523(a)(5), the Court is compelled by Section 523(a)(15) to look out all of the windows of its vehicle. *See In re Dressler*, 194 B.R. 290, 300 (Bankr.D.R.I. 1996).

*Rogan*, 283 B.R. at 648.

In essence, Section 523(a)(15)(B) embodies a form of "balancing test" in which a debtor must prove by a preponderance of the evidence that the benefit to ... [her] of a discharge of the subject debt outweighs the resulting detriment that will be suffered by the former spouse if the indebtedness is deemed dischargeable. This equitable balancing test must be applied on a case-by-case basis and involves an examination of the *totality of the circumstances* involved in each case. There is no fixed laundry list of factors to be considered, and no fixed weight to be accorded to particular facts. And as with Subsection (A), the balance must be assessed by the court with an eye out all "windows", *i.e.* with an awareness of the parties' past, present and future economic attributes and prospects.

*Rogan*, 283 B.R. at 649.

### 2. *Application of Law to Fact*

#### a. *"Safe Harbors"*

■ As discussed below, there is a serious question as to whether the Alleged

---

**10.** *Rogan* has been read at various times as supporting either position. *Compare Woszczyna*, 295 B.R. at 429 ("The *facts* of *Rogan* are ... inapposite.") (emphasis added) *with Montgomery*, 310 B.R. at 180 (reading *Rogan* as requiring an express provision).

Debt is a debt owed to the Plaintiff and incurred in the course of the above-described divorce. Accordingly, the court will first consider whether the Debtor has obviated that issue by establishing one of the "safe harbors" set forth at Section 523(a)(15)(A) or Section 523(a)(15)(B).

 The record made at the Trial established the following. Neither the Plaintiff nor the Debtor are young people (both are in their fifties). The Debtor appears not to have remarried. Friends help her out financially from time to time. The Debtor is in poor health and may become unable to work in the not too distant future. The Debtor's residence on the Real Property is a forty-five year old structure and the cost of maintaining it is not insubstantial. The Debtor still works for UCONN Health Partners. At the time of the divorce, the Debtor was working forty hours a week and was eligible for overtime wages. The Debtor was injured in September of 2003 and, as a result, through February of 2004 was able to work only twenty hours a week. As of the time of the Trial, overtime was not available to her. The Debtor was not employed during her marriage to the Plaintiff until commencement of the marital dissolution proceedings in the Family Court. The Annuity is the only substantial funding for the Debtor's retirement. The Debtor is contributing to the support of her two (adult) sons, her young grandson (from her younger son) and the pregnant fiancee' of her younger son. The Debtor claims that she cannot afford to pay the Joint Debts from income and (except for the Annuity) has no assets from which to pay them. The Debtor further testified that she is having trouble paying her bills. The Debtor and her family recently went to Portugal to visit her sick sister (the Debtor claims to have been given their passage money).

The record made at the Trial further established the following. The Plaintiff does not own a house or an automobile. His second wife owns a house (where he now lives) and an automobile (he also has use of a "company car"). The Plaintiff's second wife is a food server at a sandwich shop. The Divorce Judgment obligates the Plaintiff to pay the Debtor $265/week in alimony and $166.00/week in child support.[11] The Plaintiff's retirement will be funded by the Plaintiff's Pension and possibly by future contributions to that portion of the Annuity not transferred to the Debtor pursuant to the Divorce Judgment. (*See* Exhibit A at 3.) The Plaintiff has no savings and claims that the above-referenced garnishment has imposed a hardship upon him. He further claims that he has no assets from which to pay the Joint Debts and that he owes thousands of dollars. The Plaintiff recently went on a trip to Florida.

However, what the record established at the Trial does *not* show is noteworthy. The Trial record does not show how much the Debtor is paid. The Trial record does not show whether the Debtor has any "dependent[s]" within the purview of Section 523(a)(15). *Cf. Hoyle v. Pennsylvania Higher Educ. Assistance Agency*, 199 B.R. 518, 521 (Bankr.E.D.Pa.1996) (debtor's children over the age of majority were not dependents for purposes of determining dischargeability of student loan obligations); *Stebbins–Hopf v. Texas Guaranteed Student Loan Corp. (In re Stebbins–Hopf)*, 176 B.R. 784, 787–88 (Bankr. W.D.Tex.1994) (although debtor felt moral obligation to assist her mother, child and grandchildren, they were not dependents

---

**11.** It is unclear whether the support obligation terminated when the subject minor child reached 18 years of age.

for purposes of Section 523(a)(8)). *Cf. also* 3 Bankr.Service L.Ed. § 27:2016 (2004).[12] The Trial record does not show what the Debtor's monthly expenditures are.[13] The Trial record does not show what the Real Property is worth.[14] Giving the foregoing gaps in the Trial record, the court is not persuaded that the Debtor has proven either "safe harbor." *Cf.* 4 *Collier* ¶ 523.21[3], at 523–106.2—523–106.3 (factors relevant to a Section 523(a)(15)(B) determination).

### b. Alleged Debt as Debt Owing to the Plaintiff and Incurred by the Debtor in the Course of the Divorce

▉▉▉ The court agrees with the Debtor that there is no currently effective *express* "hold harmless" provision in the Divorce Judgment with respect to the Joint Debts.[15] However, the court adopts as the better-reasoned view the view stated in *Gibson* and like cases that the requisite "hold harmless" obligation need not (as a matter of federal law) be express but may be implied from the underlying obligation to pay third parties. But that is not the end of the analysis. That is because courts adopting the *Gibson* view often en-

gage in a detailed analysis of the relevant divorce decree or separation agreement and relevant state (including family) law to determine whether there is an implied "hold harmless" obligation incurred in the course of the relevant divorce or separation. *See, e.g., Montgomery,* 310 B.R. at 180; *Henson,* 197 B.R. at 303. Accordingly, this court believes that it is appropriate to impose upon the Plaintiff (who bears the burden of proof on the relevant issue) the burden of seeking a clarification from the Family Court as to whether the Divorce Judgment impliedly requires the Debtor now to hold the Plaintiff harmless (*i.e.,* indemnify him) with respect to the Joint Debts.

## IV. CONCLUSION

For the reasons stated above, the court concludes that: (a) the Second Count must be dismissed; (b) the Alleged Debt is not within the purview of Bankruptcy Code § 523(a)(5); (c) the Debtor has not established either of the Bankruptcy Code § 523(a)(15) "safe harbors;" (d) there is no currently-effective *express* "hold harmless" provision in the Divorce Judgment with respect to the Joint Debts; and (e) it is

12.

Adult children who are not in school and whom debtor is under no legal obligation to support are not dependents for purposes of undue hardship exception within 11 USCA § 523(a)(8)(B) and, accordingly, expenditures made and expenses incurred by debtor for such adult children will not be considered when determining whether debtor can maintain, based on current income and expenses, minimal standard of living for self and dependents if forced to repay loan. *Id.* (citation omitted).

13. Schedule I shows, *inter alia,* the Debtor's two sons as her "dependants" as of the Petition Date, and Schedule J is a statement of the Debtor's monthly expenditures as of the Petition Date. In any event, absent notice to the Plaintiff prior to the Debtor's testimony at

the Trial that the Debtor would be relying upon Schedules I and J, the court will not consider Schedules I and J as evidence in this adversary proceeding. That is because the Plaintiff was not given a meaningful opportunity to cross-examine the Debtor about Schedules I and J. *Cf.* Fed. R. Evidence 201(e) ("Opportunity to be heard ... as to the propriety of taking judicial notice ....").

14. The court will not consider Schedule A as evidence for reasons substantially identical to those stated with respect to Schedules I and J.

15. The only express hold harmless provision in the Divorce Judgment in respect of the Joint Debts applied only to one-half of the Joint Debts and by its terms expired thirty days after the effective transfer of the Annuity to the Debtor. (*See* Exhibit A at 3.)

appropriate to impose upon the Plaintiff the burden of seeking a clarification from the Family Court as to whether the Divorce Judgment impliedly requires the Debtor now to hold the Plaintiff harmless with respect to the Joint Debts.[16] Accordingly, an order will enter scheduling an on-the-record status conference to consider future steps in this adversary proceeding.[17]

---

**16.** To the extent the foregoing requires modification of the automatic stay, the automatic stay hereby is modified accordingly.

**17.** On more mature consideration, the court has determined that the issues raised by the court in the Optional Briefing Order would not properly be adjudicated in this adversary proceeding.