**In re Paul Douglas MONTGOMERY, Debtor.**

**Diane K. Ruhlen, f/k/a Diane K. Montgomery, Plaintiff,**

v.

**Paul Douglas Montgomery, Defendant.**

**Bankruptcy No. RS02–28302 PC.**

**Adversary No. RS03–1228 PC.**

United States Bankruptcy Court, C.D. California, Riverside Division.

April 28, 2004.

---

Allan Calomino, Law Office of Allan Calomino, Orange, CA, for Diane K. Ruhlen.

Edward L. Fine, Law Office of Edward L. Fine, Pasadena CA, for Paul Douglas Montgomery.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Plaintiff, Diane K. Ruhlen, f/k/a Diane K. Montgomery ("Ruhlen") seeks a judgment determining that her claim against Defendant, Paul Douglas Montgomery ("Montgomery"), a chapter 7 debtor, should be excepted from discharge under 11 U.S.C. § 523(a)(15). The court conducted a trial in this adversary proceeding on April 8, 2004. Allan Calomino, Esq. appeared on behalf of Ruhlen, and Edward Fine, Esq. appeared on behalf of Montgomery. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law [1] pursuant to Fed.R.Civ.P. 52, as incorporated into Fed.R. Bankr.P. 7052.

## I. STATEMENT OF FACTS

On June 1, 1985, Ruhlen and Montgomery were married in the State of California. On June 20, 1990, Ruhlen and Montgomery, as husband and wife, borrowed the sum of $54,000 from the Harry B. and Lee Richert Revocable Living Trust dated July 15, 1998 ("Richert Trust"). At the time, Ruhlen's parents, Harry B. Richert

and Myrtle Lee Richert, a/k/a Lee Richert, were the trustees of the Richert Trust. Ruhlen and Montgomery used the funds as a down payment for the purchase of a single family residence at 12718 Vultee Avenue, Downey, California ("Vultee Property").

Four years later, Ruhlen and Montgomery executed a note and deed of trust to evidence their loan from the Richert Trust. Ruhlen and Montgomery, as husband and wife, jointly executed a Note Secured By Deed of Trust ("Richert Note") in the original principal sum of $54,000, bearing interest at the rate of 7% per annum from June 20, 1990, payable to the Richert Trust dated January 27, 1994. The Richert Note was secured by a deed of trust lien on the Vultee Property evidenced by a Short Form Deed of Trust of even date therewith recorded as Document # 94–843009 in the Official Records of Los Angeles County, California, on May 3, 1994. The Richert Note was due and payable either (a) upon the sale of the Vultee Property or (b) upon the death of the last of the trustees of the Richert Trust.

On July 28, 1997, Ruhlen and Montgomery separated as husband and wife. Montgomery ultimately filed a petition for dissolution of marriage in the Superior Court for the State of California, County of Los Angeles, Southeast District, under Case # VD032881. In conjunction therewith, Ruhlen and Montgomery entered into a Marital Settlement Agreement ("MSA") dated October 20, 1999, for the purpose of (a) dividing their marital property; (b) allocating responsibility for the remaining marital debt; (c) establishing and allocating the payment of child support; (d) de-

---

1. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

termining visitation schedules for the non-custodial parent with the couple's three minor children of the marriage; and (e) establishing spousal support payments.

When the MSA was executed, the only marital property that had not been divided between the parties was the Vultee Property [2] and Montgomery's pension plan and deferred compensation plan as a fireman with the City of West Covina. Under the MSA, Montgomery paid Ruhlen the sum of $6,199.60 and conveyed to Ruhlen all of his right, title and interest in the Vultee Property. Ruhlen was awarded the Vultee Property as her sole and separate property. In consideration therefor, Ruhlen relinquished all of her right, title and interest in Montgomery's pension plan and deferred compensation plan which Montgomery received as his sole and separate property.[3]

Because the Vultee Property was still encumbered by a second deed of trust lien securing the Richert Note, Ruhlen and Montgomery specifically agreed in paragraph 12 of the MSA, as follows:

**12. Debt Owed to Lee Richert:** The parties agree that each will pay half of the debt owed to Lee Richert, including principal and interest."

It is undisputed that there were no community debts or obligations owing by the parties when the MSA was executed, other than the Richert Note. Indeed, Exhibit "C" to the MSA entitled "Debts and Obligations" specifically declares: "All debts and obligations have been satisfied." Nevertheless, paragraph 13 of the MSA states:

**13. Division of Debts and Obligation:** The parties agree that the debts and obligations listed in Exhibit "C" attached to this Agreement and incorporated herein by reference are their community debts and obligations and that each will pay and hold the other harmless from the debts set forth opposite the name of each. Any debts and obligations not listed in Exhibit "C" are the sole and separate responsibility of the party incurring the debt or obligation, and each party agrees to pay and hold the other harmless against any liability therefor.

On October 20, 1999, Lee Richert was the sole surviving trustee of the Richert Trust, and the Richert Note was the only debt owing by the parties to Lee Richert.

A Judgment dissolving the marriage between Ruhlen and Montgomery was en-

---

**2.** When the Vultee Property was purchased, title to the property was vested in "Harry B. Richert and Myrtle L. Richert, Husband and Wife, and Paul Douglas Montgomery and Diane K. Montgomery, Husband and Wife, All as Joint Tenants." The Richerts co-signed a loan obtained from First Nationwide Mortgage, secured by a first deed of trust lien, which was obtained by Ruhlen and Montgomery to acquire the Vultee Property. On May 3, 1994, the Richerts quitclaimed their interest in the Vultee Property to Ruhlen and Montgomery, as Joint Tenants. The debt to First Nationwide Mortgage was Ruhlen's responsibility at the time of the divorce.

**3.** In dividing the three remaining assets, Montgomery's pension plan and deferred compensation plan were valued at $81,599.20. Plaintiff's Exhibit 4 (MSA, Ex.

B). Ruhlen's undivided one-half interest in Montgomery's retirement funds was calculated at $40,799.60. The parties' interest in the Vultee Property was determined to be $34,600, *i.e.*, the $162,000 fair market value of the property, less a $127,400 debt to First Nationwide Mortgage secured by a first deed of trust lien on the property. Plaintiff's Exhibit 4 (MSA, Ex. A). Ruhlen received the parties' $34,600 interest in the Vultee Property, together with an equalization payment of $6,199.60, in exchange for her $40,799.60 interest in Montgomery's pension plan and deferred compensation plan. It is significant to note that the parties specifically excluded the impact of the Richert Note in valuing the Vultee Property to arrive at an equal division of the remaining marital property.

tered in the state court divorce proceeding on November 10, 1999. The MSA between Ruhlen and Montgomery was attached and incorporated into the Judgment.[4] After entry of the Judgment, Ruhlen continued to occupy the Vultee Property as her residence and made all mortgage and property tax payments required from the date of the Judgment.

On August 8, 2002, Ruhlen sold the Vultee Property. Lee Richert, as Trustee of the Richert Trust, made demand for payment of the principal sum of $54,000 due and owing on the Richert Note and waived her claim to accrued interest due on the note. The principal amount of the Richert Note was paid in full upon close of escrow.

After the sale of the Vultee Property, Ruhlen made demand on Montgomery to pay the sum of $27,000 representing his one-half share of the debt owing to the Richert Trust pursuant to paragraph 12 of the MSA, as incorporated into the Judgment dated November 10, 1999. Montgomery refused the demand.

On October 9, 2002, Ruhlen filed an application for an order to show cause in the divorce proceeding pending in state court, seeking to enforce the Judgment and to recover the sum of $27,000 which constituted her payment of Montgomery's portion of the debt owed to the Richert Trust. The order to show cause was set to be heard by the state court on November 13, 2002. On November 12, 2002, Montgomery filed his voluntary chapter 7 petition in this case to halt further action on the claim in state court and to discharge the debt. Ruhlen timely commenced this adversary proceeding on February 18, 2003, prior to expiration of the deadline for complaints seeking a determination concerning the dischargeability of debts set in this case pursuant to Fed.R.Bankr.P. 4007.

## II. DISCUSSION

■ This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core .proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this court. 28 U.S.C. § 1409(a). The standard of proof under § 523(a)(15), as with other § 523(a) dischargeability exceptions, is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Objections,to the dischargeability of a debt are to be literally and strictly construed against the objector and liberally construed in favor of the debtor in order to promote the debtor's fresh start. *See Quarre v. Saylor (In re Saylor),* 108 F.3d 219, 221 (9th Cir.1997). That policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement. *Matter of Crosswhite,* 148 F.3d 879, 881 (7th Cir.1998).

Section 523(a)(15) states that a discharge in chapter 7 does not discharge an individual debtor from a debt, not of the kind described in § 523(a)(5), that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

---

**4.** Paragraph 4(i) of the Judgment states that "[a] marital settlement agreement between the parties is attached." Paragraph 4 further states:

> Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Plaintiff's Exhibit 4, p. 2.

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

■ Plaintiff has the initial burden under § 523(a)(15) to establish a *prima facie* case by a preponderance of the evidence, *i.e.*, that the debt was *incurred* in the course of a divorce proceeding, was imposed by a court of record in that proceeding, and does not qualify as alimony, maintenance or support within the scope of § 523(a)(5). *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 139 (9th Cir. BAP 1997). Once a *prima facie* case has been established, the burden of proof then shifts to the debtor to establish by a preponderance of the evidence that the debt is dischargeable because the conditions set forth in either subparagraph (A) or subparagraph (B) of § 523(a)(15) exist. *Id.* at 139–40.

■ Section 523(a)(15)'s subsections present a two-prong test. If the debtor does not have the ability to pay, the debt is discharged. Only if the debtor has the ability to pay does the court then turn to § 523(a)(15)(B) and measure whether the benefit of giving the discharge to the debtor outweighs the detriment that such discharge would cause the plaintiff. *Id.* at 141 n. 24.

### A. The Debt Was "Incurred" by Montgomery in the Course of the Divorce Proceeding

While conceding that Ruhlen's claim is not in the nature of alimony, maintenance or support, Montgomery denies that the debt was incurred by him in the course of the divorce proceeding between the parties. Montgomery argues that the Richert Note is not the type of debt excepted from discharge under § 523(a)(15) because it is payable to a third party, not his former spouse. Alternatively, Montgomery asserts that the absence of a specific obligation under MSA's paragraph 12 to indemnify Ruhlen for payment of the Richert Note is fatal to Ruhlen's cause of action under § 523(a)(15).

Courts are divided on the issue of whether debts owing to third parties and debts not subject to indemnification or hold harmless language fall within the ambit of § 523(a)(15). *Compare Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 205 (6th Cir. BAP 1998), *Crawford v. Osborne (In re Osborne)*, 262 B.R. 435, 442 (Bankr. E.D.Tenn.2001), *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 302–303 (Bankr. E.D.Ark.1996), *and Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312, 316 (Bankr. W.D.Ark.1996), *with McKinnis v. McKinnis (In re McKinnis)*, 287 B.R. 245, 257 (Bankr.E.D.Mo.2002), *McCracken v. LaRue (In re LaRue)*, 204 B.R. 531, 535–536 (Bankr.E.D.Tenn.1997), *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr. E.D.Ky.1996), *Barstow v. Finaly (In re Finaly)*, 190 B.R. 312, 315 (Bankr. S.D.Ohio 1995), *and Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr. W.D.Mo.1995).

### 1. Section 523(a)(15) Does Not Impose a "Direct Pay" Requirement

■ Section 523(a)(15), by its terms, encompasses "any debt" that is not in the

nature of alimony or child support which is incurred in the course of a divorce or separation. *See In re Gamble*, 143 F.3d 223, 225 (5th Cir.1998) (construing § 523(a)(15) to include third party debts and stating that the statute should be given "the full reach implicated by its plain language"); *Henson*, 197 B.R. at 302–03 (stating there is no "direct pay" requirement imposed by § 523(a)(15)).[5] For a debt to qualify for treatment under § 523(a)(15), the critical issues are the nature of the debt, not the payee, and whether under state law the debt was incurred in the course of a divorce or separation. *Gibson*, 219 B.R. at 203. *See, e.g., Crosswhite*, 148 F.3d at 882 (holding nondischargeable a debtor's obligation to his former spouse under a divorce decree to assume liability for two joint debts to a third party, and stating that § 523(a)(15) "is intended to cover divorce-related debts such as those in property settlement agreements"); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 200 (observing that "Congress amended the Bankruptcy Code in 1994 to allow exemptions from discharge for all obligations incurred as a result of a divorce decree"); *Osborne*, 262 B.R. at 445 (holding that debtor's liability for payment of the balance owing on three joint credit card accounts assumed by the debtor under a

marital dissolution agreement with his former spouse were nondischargeable under § 523(a)(15)); *Salerno v. Crawford (In re Crawford)*, 236 B.R. 673, 677 (Bankr. E.D.Ark.1999) (stating that nonsupport divorce debt may be excepted from discharge under § 523(a)(15) despite the fact that the debt is payable to a third party, rather than the former spouse).

*Gamble* and *Crosswhite* were cited by the Ninth Circuit in *Short v. Short (In re Short)*, 232 F.3d 1018, 1022–23 (9th Cir. 2000). In *Short*, the divorce decree required the debtor to pay his former spouse the balance owing under a post-nuptial agreement between the parties. The post-nuptial agreement was intended to memorialize the debtor's obligation to repay money loaned to him by his former spouse prior to marriage, and obligate the debtor to repay the loan in the event the marriage did not last three years. The bankruptcy court held that the debt was nondischargeable under § 523(a)(15). *Id.* at 1022. On appeal, the BAP agreed with the bankruptcy court. *Id.* The Ninth Circuit affirmed the decisions of the lower courts, holding that the debt was nondischargeable under § 523(a)(15) because it was incurred by the debtor as part of the division of property under the terms of a judgment of dissolution. *Id.* at 1024.

---

**5.** Nor *is there a direct pay requirement for alimony or child support under § 523(a)(5). In the Ninth Circuit, a debt to a third party on behalf of a child or former spouse can be as much for "support" for dischargeability purposes under § 523(a)(5) as payments owing directly to a former spouse. Leibowitz v. County of Orange (In re Leibowitz)*, 217 F.3d 799, 803 (9th Cir.2000). *Accord Falk & Siemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589, 593 (2d Cir.2002) (stating the fact that a debt is payable to a third party does not prevent classification of that debt as nondischargeable under § 523(a)(5)); *Williams v. Kemp (In re Kemp)*, 232 F.3d 652, 653 (8th Cir.2000) (stating that it is the nature of the

debt, not the identity of the payee, that determines the debt's nondischargeability under § 523(a)(5)); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1490 (10th Cir.1995), *cert. denied*, 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995) (holding that guardian ad litem and psychologist fees incurred in child custody proceedings and ordered to be paid directly to the guardian ad litem and psychologist were nondischargeable under § 523(a)(5)); *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983) (holding that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable).

In this case, the fact that the original obligation of the parties was payable to the Richert Trust rather than Ruhlen does not, in and of itself, disqualify the debt at issue from nondischargeability under § 523(a)(15). Paragraph 12 of the MSA expressly allocates to Montgomery responsibility for one-half of the debt owing under the Richert Note. The MSA was incorporated into the terms of the Judgment entered in the state court divorce proceeding on November 10, 1999. Paragraph 12 was not inserted into the MSA superfluously. Nor does the evidence support the finding sought by Montgomery that "in paragraph 12 the parties only reaffirmed their duty to pay Mrs. Richert." [6]

Montgomery's obligation to pay one-half of the Richert Note was a critical element of the property settlement agreement between the parties. Under the MSA, Ruhlen relinquished valuable rights in Montgomery's pension plan and deferred compensation plan in exchange for the parties' equity in the Vultee Property and his promise to pay one-half of the Richert Note secured by the property. Montgomery reneged under the Judgment and sought to discharge his obligation in this case. In the court's view, Montgomery's action is precisely the tactic § 523(a)(15) was designed to prevent and Montgomery's obligation to Ruhlen is exactly the type of debt § 523(a)(15) was intended to except from discharge.

By virtue of paragraph 12 of the MSA, Montgomery incurred an obligation new and independent of the underlying obligation to the Richert Trust. Because the debt at issue "is not of the kind" described in § 523(a)(5) and was "incurred" by Montgomery in the course of his divorce and in connection with the Judgment, the debt is encompassed within § 523(a)(15)'s exception to discharge.[7]

### 2. The MSA's "Hold Harmless" Provision

Notwithstanding the obligation imposed by the Judgment, Montgomery claims that Ruhlen's debt is still dischargeable because paragraph 12 of the MSA lacks a specific provision requiring Montgomery to indemnify and hold Ruhlen harmless for payment of his portion of the Richert Note. Under California law, a written contract must be read as a whole, and every part must be interpreted with reference to the whole. *In re Crystal Prop., Ltd.*, 268 F.3d 743, 747 (9th Cir.2001). Conversely, the meaning of words used in a contract are to be determined, not from a consideration of the words alone, but from a reading of the entire contract. *Sunset Sec. Co. v. Coward–McCann, Inc.*, 47 Cal.2d 907, 306 P.2d 777, 779 (1957). The fundamental goal is to give effect to the mutual intent of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636; *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir.2002).

Contractual clauses are not to be construed in isolation.[8] "The whole of a

---

**6.** Defendant's Trial Brief, p. 4, l. 16–17.

**7.** Notwithstanding § 523(a)(15)'s broad application to all non-support debt incurred in a divorce or separation, a person who is not a spouse, former spouse or dependent of the debtor lacks standing to sue for nondischargeability under § 523(a)(15). *Ashton v. Dollaga (In re Dollaga)*, 260 B.R. 493, 497 (9th Cir. BAP 2001); *Woodruff, O'Hair & Posner, Inc.*

*v. Smith (In re Smith)*, 205 B.R. 612, 615 (Bankr.E.D.Cal.1997).

**8.** "Particular clauses of a contract are subordinate to its general intent." Cal. Civ.Code § 1650. Specific provisions will control general provisions in a written contract only if inconsistent and irreconcilable with the general provisions of the agreement. *See Ticor Title Ins. Co. v. Rancho Santa Fe Ass'n*, 177

contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ.Code § 1641. *See, e.g., City of El Cajon v. El Cajon Police Officers' Ass'n,* 49 Cal.App.4th 64, 71, 56 Cal.Rptr.2d 723 (1996) (stating that a court must view the language used in light of the instrument as a whole and not use a "disjointed, single-paragraph, strict construction approach"); *Ticor Title,* 177 Cal.App.3d at 730, 223 Cal.Rptr. 175 (stating that the court must endeavor to give effect to every provision). Where a written agreement attempts to cover all relationships of the contracting parties, the interpretation to be given the contract is determined as a matter of law solely from the instrument itself, without making any part of the instrument nugatory. *Am. Pipe & Steel Corp. v. Firestone Tire & Rubber Co.,* 186 F.Supp. 904, 908 (S.D.Cal. 1960), *aff'd,* 292 F.2d 640 (9th Cir.1961); *see City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal. App.4th 445, 473, 80 Cal.Rptr.2d 329 (1998) (stating that "[C]ourts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless"); *Dollar v. Int'l Banking Corp.,* 10 Cal.App. 83, 87, 101 P. 34 (1909) (observing that " 'one clause of a contract, apparently conclusive as to a particular thing, may be enlarged or limited by other provisions of the instrument upon the same subject' "). Therefore, the court must interpret the MSA in a manner that gives full meaning and effect to all of the MSA's provisions and avoid a construction that focuses only on a single clause of the agreement.[9]

Applying these principles to the instant case, the court finds that the Judgment incorporates an agreement between Ruhlen and Montgomery to hold each other harmless from further liability on debts and obligations apportioned under the property settlement agreement. Paragraph 13 expressly states that "[a]ny debts and obligations not listed in Exhibit 'C' are the sole and separate responsibility of the party incurring the debt or obligation, and each party agrees to pay and hold the other harmless against any liability therefor." It is undisputed that all debts and obligations of the parties had been satisfied at the time of the divorce, except the Richert Note. The Richert Note was not listed in Exhibit C, but was specifically addressed by the parties in paragraph 12 of the MSA. Principles of contract construction require that the provisions of paragraph 13 be accorded meaning. Taken together, paragraphs 12 and 13 of the MSA evidence an intention by Ruhlen and Montgomery to allocate their joint liability on the Richert Note and to hold each other harmless against further liability on the note. Under paragraph 12 of the MSA, as incorporated into the Judgment, Montgomery "incurred" a new and independent obligation to pay one-half of the Richert Note. The evidence indicates that neither party contemplated payment of Montgomery's portion of the Richert Note from the sale of the Vultee Property. Indeed, a satisfac-

---

Cal.App.3d 726, 730, 223 Cal.Rptr. 175 (1986); *Nat'l Ins. Underwriters v. Carter,* 17 Cal.3d 380, 131 Cal.Rptr. 42, 551 P.2d 362 (1976).

9. At trial, Montgomery argued that the MSA was drafted by or on behalf of Ruhlen, and therefore, any ambiguity in the terms of the MSA should be construed against her. However, paragraph 30 of the MSA belies Montgomery's contention. Paragraph 30 states, in pertinent part:

This Agreement has been jointly prepared and negotiated by counsel for each of the parties and shall not be construed against either party.

Plaintiff's Exhibit 4 (MSA, p. 13, 1.1–2).

tion of Montgomery's obligation on the Richert Note from the sale proceeds would have upset the equal division of the parties' respective interests in the Vultee Property, pension plan and deferred compensation plan reached under the MSA. Had the parties not intended to indemnify and hold each other harmless with respect to their new and independent obligations as to Richert Note, paragraph 13 of the MSA would be nugatory, inoperative and meaningless.

Finally, there is no hidden requirement in § 523(a)(15) that the divorce decree or separation agreement giving rise to the debt at issue contain a "hold harmless" or other indemnification provision. *See, e.g., Gibson,* 219 B.R. at 203; *Woszczyna v. Woszczyna (In re Woszczyna),* 295 B.R. 425, 429 (Bankr.D.Conn.2003); *Osborne,* 262 B.R. at 441–42; *Melton v. Melton (In re Melton),* 228 B.R. 641, 645 (Bankr.N.D.Ohio 1998); *Turner v. McClain (In re McClain),* 227 B.R. 881, 885 (Bankr.S.D.Ind.1998); *Carlisle v. Carlisle (In re Carlisle),* 205 B.R. 812, 816 (Bankr.W.D.La.1997); *Henson,* 197 B.R. at 303; *Schmitt,* 197 B.R. at 315. *But see Gemza v. Rogan (In re Rogan),* 283 B.R. 643, 647–48 (Bankr.D.Conn.2002); *LaRue,* 204 B.R. at 535–536; *Owens,* 191 B.R. at 673–74; and *Stegall,* 188 B.R. at 598.

Even if there was no "hold harmless" language in the Judgment, Montgomery incurred a debt to Ruhlen in connection with the divorce proceeding under California law. State law governs the creation and enforcement of obligations arising out of marriage dissolution. *See*

*Gibson,* 219 B.R. at 195; *Carlisle,* 205 B.R. at 816. In California, a property settlement agreement made between spouses is enforceable as a contract, and may be submitted to the court for approval and incorporation into the judgment. Once a property settlement agreement has been incorporated into a judgment of dissolution, the agreement merges into and becomes superceded by the decree. *Flynn v. Flynn,* 42 Cal.2d 55, 265 P.2d 865, 866 (1954); *In re Marriage of Umphrey,* 218 Cal.App.3d 647, 656, 267 Cal.Rptr. 218 (1990). Once superceded by the judgment, the value attaching to the property settlement agreement itself is only historical. *Umphrey,* 218 Cal.App.3d at 656, 267 Cal.Rptr. 218; *In re Marriage of Jones,* 195 Cal.App.3d 1097, 1104, 241 Cal.Rptr. 231 (1987). *See generally,* 32 Cal. Jur.3d (Rev) *Family Law* §§ 557–558 (1994). California courts are authorized to enforce judgments of dissolution "by execution, the appointment of a receiver, or contempt, or by such other order as the court in its discretion determines from time to time to be necessary." Cal. Family Code § 290. Here, the Judgment imposed upon Montgomery a duty to pay "half of the debt owed to Lee Richert, principal and interest." Not only was the Judgment enforceable under Cal. Family Code § 290, the state court expressly retained jurisdiction in the Judgment to "make other orders necessary to carry out" and enforce its terms.[10] Therefore, Ruhlen has established a *prima facie* case that, under the Judgment, Montgomery incurred a debt in connection with the divorce within the meaning of § 523(a)(15).[11]

---

**10.** Indeed, Montgomery halted Ruhlen's effort to enforce the Judgment by contempt at a hearing scheduled for November 13, 2002, by filing his voluntary petition in this case at 11:41 a.m. on November 12, 2002.

**11.** Neither of the cases cited by Montgomery support a conclusion to the contrary. In *Bartholomew v. Bartholomew (In re Bartholomew),* 226 B.R. 849 (Bankr.S.D.Ohio 1998), the debtor and his former spouse, Holly Bartholomew, had obtained a $20,000 loan from Holly's mother, Marjorie S. Paine, to fund a

## B. *Ability To Pay*

■ Having established a *prima facie* case for non-dischargeability under § 523(a)(15), the burden shifts to Montgomery to demonstrate either that he does not have the ability to pay the debt or that discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to his former spouse. *Jodoin*, 209 B.R. at 139–40; *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952 (Bankr.S.D.Cal.1996). Montgomery contends that he does not have the ability to pay the debt from income or property not reasonably necessary to be expended for his maintenance and that of his dependents.

■ Under the "ability to pay" test, the court must look at the parties relevant financial information as of the time of trial. *Jodoin*, 209 B.R. at 142; *Fitzsimonds v. Haines (In re Haines)*, 210 B.R. 586, 591 (Bankr.S.D.Cal.1997); *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 300 (Bankr. D.R.I.1996). The inquiry begins with an analysis of the debtor's current financial circumstances, but ends with an inquiry into whether the circumstances are fixed or are likely to change in the foreseeable future. *Bullinger v. Wehr (In re Wehr)*, 292 B.R. 390, 401 (Bankr.D.N.D.2003). The primary test for measuring a debtor's ability to pay is the "disposable income" test. *Jodoin*, 209 B.R. at 142 (stating that the "disposable income" test "provides an excellent starting point for measuring a debtor's ability to pay" under § 523(a)(15)); *Morris*, 193 B.R. at 953 (stating that "the 'ability to pay' language in § 523(a)(15)(A) mirrors language used in § 1325(b)(2) which is the 'disposable income' standard used for considering objections to Chapter 13 plans"). In applying the "disposable income" test in the context of § 523(a)(15)(A), however, the court is not bound by the three-year limitation set forth in § 1325(b)(1)(B). *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1122 (9th Cir.2000) (holding that a bankruptcy court did not err in ordering repayment over five years); *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845, 855 (Bankr.E.D.Cal.1996), *aff'd*, 209 B.R. 132 (9th Cir.BAP1997) (stating that "the three-year horizon prescribed by § 1325(b)(1)(B) is not applicable in chapter 7 cases").

At trial, Montgomery offered little evidence suggesting that his income and expenses had changed dramatically from the income and expenses disclosed on Schedules I and J in his bankruptcy petition. According to Schedule I, Montgomery, who is employed as a firefighter with the City of West Covina, receives monthly gross income of $5,266, with an opportunity to earn more. Montgomery admits that he is in line for a promotion to captain having twice passed the requisite examination for the position. Montgomery's pay-

down payment on their marital residence. Five years later, the parties were divorced. When the proceeds from the sale of the marital residence were insufficient to pay the Paine note, Holly Bartholomew filed a complaint seeking to have the balance of the debt declared non-dischargeable under § 523(a)(15). The court reviewed the divorce decree and held that the debt was dischargeable, stating:

"the debtor did not incur any additional obligation to the plaintiff to pay her portion of the joint obligation under the promissory note to Marjorie S. Paine. *Nor did the plaintiff acquire any right to payment or enforcement of the obligation under the divorce decree.*"

*Id.* at 851(emphasis added). In *Paneras v. Paneras (In re Paneras)*, 195 B.R. 395 (Bankr. N.D.Ill.1996), the court found specifically that the debts were property settlement obligations incurred in the course of a divorce, but ultimately held the debts were dischargeable because the debtor sustained his burden of establishing an inability to pay under § 523(a)(15)(A). *Id.* at 405–06.

roll deductions include: (a) payroll taxes and social security—$1,066.76; (b) insurance—$820.84; (c) union dues—$103.78; (d) auto and boat payments—$750.00, and (e) child support—$1,643.42. As a result of his payroll deductions, Montgomery's monthly net income according to Schedule I is $881.20. Montgomery's spouse, Laura Montgomery, is employed as a registered nurse with Citrus Valley Health Group in West Covina, California. Her monthly gross income as a nurse is $5,500. Laura Montgomery also earns $300 per month as a part-time teacher. After deducting payroll taxes and social security,[12] Laura Montgomery's net monthly income totals $4,175. The Montgomerys' combined monthly net income is $5,056.20.

Montgomery's Schedule J reflects average monthly expenses for himself and his dependents of $3,454, which include an expense for "school tuition" of $340.[13] Ruhlen submitted evidence establishing that Montgomery's actual school tuition expense for the children of their marriage is $175 per month, and that Montgomery's tuition expense obligation will expire in June 2004. Therefore, the Montgomerys' actual monthly expenses total $3,289. Ruhlen did not challenge Montgomery's expenses, except the amount of the school tuition, nor did Ruhlen provide any evidence that such expenses were not either actual or necessary.

Based on the foregoing, the court finds that Montgomery's monthly disposable income equals $1,767 ($5,056–$3,289). Montgomery has failed to carry his burden under § 523(a)(15)(A). Indeed, the evidence establishes that Montgomery has the ability to pay the Ruhlen debt within a period of 16 months or less.

## C. Balancing of Detriments

▮▮▮▮▮ After finding an ability to pay, the court must weigh the equities under the "totality of circumstances" test and consider the following nonexclusive factors: (a) the income and expenses of both parties; (b) whether the nondebtor spouse is jointly liable on the debts; (c) the number of dependents; (d) the nature of the debts; (e) the reaffirmation of any debts, and (f) the nondebtor spouses ability to pay. See Haines, 210 B.R. at 594; Morris, 193 B.R. at 954 n. 8; Hill v. Hill (In re Hill), 184 B.R. 750, 756 (Bankr.N.D.Ill. 1995). The bankruptcy court in Jodoin observed:

> In considering the balancing defense under § 523(a)(15)(B), the relevant inquiry into benefit and detriment in this instance primarily focuses upon the total economic situation of the parties in their new lives. One who is financially secure is better able to absorb the loss. Hence, the total income and assets of the plaintiff and her new spouse are relevant, as are the total income and assets of the debtor and his new spouse.

Jodoin, 196 B.R. at 855. Here, § 523(a)(15)(B)'s balancing test tilts in favor of Ruhlen.

Ruhlen has been married to Charles Ruhlen since March 12, 2000. Charles Ruhlen has two children from a prior mar-

---

**12.** Schedule I states that $3,250 in payroll taxes and social security are deducted from Laura Montgomery's gross monthly income. According to Montgomery's response to Ruhlen's Interrogatory # 6, the "correct figure is $1,625.00."

**13.** Montgomery did not submit any other evidence of his current monthly expenses. According to Montgomery's response to Ruhlen's Interrogatory # 13, there is no debt owed by Laura Montgomery in her name alone. Laura Montgomery holds a Visa card issued by Providence Bank in her name alone, but the balance on the card was –0–when the interrogatories were answered on October 30, 2003.

riage, one of which resides with him. The Ruhlen family currently resides in a home owned by Ruhlen's mother, Lee Richert, who is 81 years of age and in failing health. Ruhlen is a part-time care giver to her mother.

Charles Ruhlen is 46 years old and employed as a renal equipment repair technician by Total Renal Care, Inc. He is the primary means of support for the Ruhlen household. Charles Ruhlen receives bi-weekly gross income of approximately $2,816. Charles Ruhlen's payroll deductions include: (a) payroll taxes and social security—$570.88; (b) 401K contribution—$140.79; (c) medical, dental and other insurance—$98.33, and (d) miscellaneous after-tax deductions—$14.13. As a result of his payroll deductions, Charles Ruhlen's bi-weekly net income is approximately $1,992, or $4,316 per month. Ruhlen earns monthly gross income of $900 as a part-time adult education teacher at Downey Adult School. After deducting payroll taxes and social security, Ruhlen receives net income of approximately $840 per month. She also receives $1,517 per month in child support from Montgomery.[14] The Ruhlens' reported gross income of $81,287 on their Form 1040, U.S. Individual Income Tax Return for 2003.

Ruhlen does not have a retirement plan nor a retirement savings account. Charles Ruhlen's 401K plan currently has a value under $25,000. The Ruhlens also do not own any real property. Despite not having a mortgage payment, the Ruhlen's monthly household expenses total $6,846, which include (a) tuition and school—$1,800, (b) home maintenance—$400; (c) food—$700; (d) clothes—$300; (e) telephone—$250; (f) vehicle—$857, (g) tithe to church—$400; (h) credit cards—$400; (i) entertainment—$125; (j) attorneys fees—$200; (k) vacation—$500, and (l) child support payable by Charles Ruhlen—$440. Montgomery did not challenge Ruhlen's expenses nor provide any evidence that such expenses were not either actual or necessary. According to the evidence, the Ruhlens have no net disposable monthly income and are living from paycheck to paycheck.

On the other hand, Montgomery and Laura Montgomery own a home at 14180 Deerbrook Lane, Chino Hills, California.[15] The Montgomery household includes Laura Montgomery's two children from a prior marriage. As previously noted, the Montgomery's both work full-time, and each contribute to their respective retirement plans. At the time of the divorce, Montgomery's pension plan and deferred compensation plan had a combined value of $81,599. Montgomery has sufficient dis-

14. Montgomery pays directly to a private school an additional $175 per month on behalf of Ruhlen, which represents one-half of the school tuition for the youngest child of their marriage. As previously noted, the tuition support obligation will cease in June 2004. Montgomery also shares in the payment of the children's extracurricular activities, such as sports, music lessons and church camps. This amount varies from –0– to $100 per month.

15. According to the petition, Montgomery and his spouse, Laura Montgomery, reside at 14180 Deerbrook Lane, Chino Hills, California ("Deerbrook Property"). Montgomery

disclosed under penalty of perjury in Schedule A that the Deerbrook Property valued at $300,000 was in his "spouse's name only" at the time of bankruptcy. On October 30, 2003, Montgomery responded to Ruhlen's Interrogatory # 18 stating under penalty of perjury that the Deerbrook Property "is and always has been owned by defendant's spouse." However, the evidence establishes that the Deerbrook Property was conveyed to Montgomery and his spouse, as husband and wife, by Grant Deed dated February 21, 2001, recorded as Document No. 20010103942 in the Official Records of San Bernardino County, California, on March 22, 2001.

posable net income to pay the Ruhlen debt in 16 months or less. According to the evidence, Montgomery also receives extra "cash" working part-time performing drywall construction services. Since the filing of the bankruptcy petition, the Montgomerys have leased a new Honda automobile and installed granite counter tops and made other improvements to their residence. Montgomery has not satisfied his burden under § 523(a)(15)(B). Under the facts of this case, the court cannot find that Montgomery will be driven to a lower standard of living by paying the Ruhlen debt from net disposable income. On the contrary, the preponderance of the evidence establishes that discharging the debt harms Ruhlen more than it benefits Montgomery. Accordingly, the court finds the debt at issue is excepted from discharge under § 523(a)(15).

D. *Reasonable Attorneys Fees and Costs of Suit*

 In her complaint, Ruhlen prays for an award of reasonable attorneys fees and costs of suit. There is no general right to recover attorney's fees under the Bankruptcy Code. *Renfrow v. Draper*, 232 F.3d 688, 693 (9th Cir.2000); *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir.1997). If a divorce decree provides for the payment of attorney's fees, and state law issues are litigated in the bankruptcy proceeding, attorney's fees are available, but only to the extent that they were incurred litigating the state law issues. *Renfrow*, 232 F.3d at 694. A bankruptcy court is prohibited from awarding a party attorney's fees for litigating federal law issues in a bankruptcy court simply because state law may be "integral" to determining dischargeability. *Id. See Baroff*, 105 F.3d at 442–43; *Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1126–27 (9th Cir.1996).

In this case, the Judgment contains a provision allowing for reasonable expenses incurred in enforcing the judgment. Paragraph 25 of the MSA incorporated into the Judgment provides:

> In the event that either of the parties shall be required to bring any action or proceeding to enforce any of the provisions of this Agreement or any court order made after merger of any provision of this Agreement in the dissolution judgment, the party prevailing in such action or proceeding shall be entitled to recover all costs of such enforcement proceeding, including reasonable attorney fees as set by the court. No such liability shall accrue unless ten (10) days prior notice of the claimed default has been given to the alleged defaulting party, and such party may cure the default within that ten (10) day period without liability for the other party's costs or fees.

Notwithstanding the existence of a basis to support a limited award of fees, Ruhlen did not submit any evidence at trial identifying the legal services rendered in this action solely with respect to the litigation of state law issues, the amount of fees incurred by reason of such legal services, nor the reasonableness of such fees. Accordingly, Ruhlen's request for attorneys fees is denied. Costs are awarded to Ruhlen as the prevailing party. Fed. R.Bankr.P. 7054(b).

## III. CONCLUSION

For the reasons stated herein, the debt owing by Montgomery to Ruhlen is excepted from discharge pursuant to § 523(a)(15). A separate judgment will be entered consistent with this opinion.