70 Cal.Rptr.3d 51 (2007)
158 Cal.App.4th 430
In re the MARRIAGE OF Sydney L. and Louise HARRIS.
Sydney Lowe Harris, Appellant,
v.
Louise Croce, Respondent.
No. E040674.
Court of Appeal of California, Fourth District, Division Two.
December 11, 2007.
*52 James W. Wiley, Sacramento; Swanson & Myers and Marie Myers, for Appellant.
The Mellor Law Firm, Mark A. Mellor, Allen P. Sanders, Riverside; Dunn Koes LLP, Pamela E. Dunn and Daniel J. Koes, Pasadena, for Respondent.

OPINION
GAUT, J.

1. Introduction

In May 1994 Harris and Croce terminated their marriage, agreed that spousal support would be waived, and that Harris would hold Croce harmless from the obligation of the community to pay Mike D. Munaretto and Carol E. Munaretto in connection with a debt totaling $140,000 at the time but which has increased to over $230,000. In October 1999, Harris filed a Chapter 7 bankruptcy petition listing the Munarettos as unsecured creditors but did not include Croce as a creditor. Harris did not notify Croce of his petition.
On February 1, 2000, Harris was granted a discharge of his debts under section 727 of the Bankruptcy Code. Harris never did include Croce in the bankruptcy petition and did not tell her that his obligation to the Munarettos had been discharged in bankruptcy.
In 2002, Croce purchased a home but was unaware of the Munaretto judgment until November 2004, when she received an application for renewal of the judgment from the Munarettos.
This proceeding began by Croce as a law and motion matter seeking an order modifying the spousal dissolution judgment to order Harris to hold her harmless from the Munaretto claims. That motion expanded into an evidentiary hearing consisting of Croce's testimony. As a result of the proceedings, the trial court denied Croce's initial request to compel Hams to provide spousal support but made the following findings and orders:
"2. The Court finds that Petitioner, SYDNEY LOWE HARRIS, has had at various points in time before the bankruptcy discharge, as well as after, the ability to pay on the debt set forth in Paragraph 3 of the Judgment for Dissolution filed on January 26,1995, specifically stating that Petitioner shall pay the following community property obligation and hold Respondent free and harmless therefrom on the litigation with Munaretto, Case No. VC 000394, and has failed and neglected to do so, although it is Petitioner's responsibility as per the parties' agreement that the parties had in their contractual agreement which is the Marital Settlement Agreement.
"3. Despite lack of harm directly to Respondent at this time, that Petitioner does not intend to indemnify Respondent in the future, and that the Court finds therefore, that breach, as well as anticipatory breach in the alternative, has occurred which requires compensation of a party in order to make the party whole.
"4. The most appropriate method of doing so is to place Respondent in no better position than she would have been had, in fact, this agreement has been complied with; namely, this is not a situation wherein Respondent should be allowed to obtain a windfall. This is a situation wherein if Respondent decides that she wishes to go by way of a discharge in bankruptcy herself, that she does not simply collect a quarter of million dollars from Petitioner to keep for her own purposes. This was for a very specific use.
*53 "5. It does not appear appropriate that the Court order the amount of $239,129.54 be ordered by way of Writ of Execution. That Respondent may obtain by way of Writ of Execution against Petitioner for that amount which is the amount of the Munaretto judgment against Respondent with orders that any amounts collected from Petitioner by way of Writ of Execution on this debt be forwarded to Respondent's judgment creditor, which would be the Munarettos for payment on the debt. That would be a pure indemnification. It should occur within two weeks of the money actually being in hand."
We reject Harris's assertion that his bankruptcy discharge terminated his obligation to pay the Munaretto community obligations despite his written agreement to do so.

2. Effect of the Discharge of Harris in Bankruptcy

On January 26, 1995, Harris and Croce entered an agreement of dissolution of their marriage which, in addition to other agreements, required Harris to "hold ... [Croce] harmless on litigation ... with Munaretto...."
Harris argued before the trial court that his subsequent discharge in Chapter 7 bankruptcy in February 2000 discharged his obligation to Croce under their dissolution agreement. In response, Croce argued that Harris's Chapter 7 discharge did not terminate his obligation to her under the dissolution agreement for two reasons:
First, Croce argues that Harris's obligation was not discharged under Title 11 United States Code section 523(a)(5) because her agreement with Harris was in the nature of "alimony to, maintenance for, or support" for her as the spouse of Harris. Croce's own reference to the case of In re Gionis (9th Cir.BAP1994) 170 B.R. 675, 683-684 (Gionis), raises substantial doubt that alimony, maintenance, or support for Croce was an element in the dissolution of the marriage. In the Gionis case there was a substantial disparity between the income of the husband and wife. The parties had a minor child for which custody was required. The trial court concluded that payments made to the wife by the husband were in the nature of spousal support.
None of the Gionis factors were involved here. There was apparently no children in the marriage, there was no discussion of Croce's need for support, and no evidence of a disparity of income between them. The absence of those factors militated against a finding that the indemnity agreement between Harris and Croce was in the nature of spousal support.
In the alternative, Croce argues that Harris's obligation to indemnify her was nondischargeable under .Title 11 United States Code section 523(a)(15) (section 523(a)(15)). That section provided, at the time of the termination of the marriage, that discharge of an individual debtor under section 727 of the Bankruptcy Code does not discharge that debtor from a debt of the kind described in section 523(a)(15) incurred by the debtor in the course of a dissolution unless (a) the debtor does not have the ability to pay such debt from income or property that is not necessary to be expended for the maintenance or support of the debtor, or (b) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse. In that connection, the trial court could find that Harris had the ability to pay the Munaretto judgment.
In the case of In re Montgomery (2004) 310 B.R. 169 (Montgomery), the court considered some factors similar to, and pertinent to this case. The parties borrowed money from wife's parents to purchase *54 a home and executed a joint note to wife's parents. Twelve years after the marriage, they separated. Wife received the house; husband received rights to his pension plan. They each agreed to pay one-half of the debt owed to wife's parents. When wife subsequently sold the property husband refused to pay his one-half share of the unpaid debt.
The trial court observed that while dischargeability of a debt is liberally construed in favor of the debtor in order to promote his or her fresh start, that result is tempered when the debt arises from a divorce or separation agreement.
The trial court found that Title 11 United States Code section 523(a)(5) only precludes a debtor from discharging his obligations for alimony, maintenance or support. Section 523(a)(15), however, precludes a discharge of the debtor in the course of a divorce, separation, or separation agreement unless (a) the debtor does not have the "ability to pay from the income or property of the debtor such a debt or (b) the discharge of the debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse or child of the debtor.
The Montgomery trial court found that the wife was required by a preponderance of the evidence to prove that the debt was incurred in the course of a divorce proceeding, was imposed by a court of record, and did not qualify as alimony, maintenance or support within the scope of Title 11 United States Code section 523(a)(5). Once wife established those facts, the burden of proof shifted to husband to establish by a preponderance of the evidence that the debt was dischargeable because the conditions set forth in subparagraph (A) or subparagraph (B) of section 523(a)(15) existed. (Montgomery, supra, 310 B.R. at p. 176.)
The Montgomery case confirms that section 523(a)(15)(A) and (B) applies to this case and that Harris's obligation under the judgment of January 26,1995, is not terminated unless subsections (A) or (B) apply. On remand the trial court must consider whether those subsections apply to Harris here.

3. Harris Failure To Notify Croce of His Petition

Croce complains that Harris's failure to notify her of his bankruptcy proceeding was dishonest, calculated to circumvent the bankruptcy court's review of the indemnity agreement, and prejudiced her. She asserts that the "no-asset, nobar-date" has prejudiced her. She misunderstands the meaning of the concept. It merely informs creditors that there appear to be no assets available from which unsecured creditors can be paid and therefore creditors are not required to file a proof of claim until the bankruptcy clerk notifies them of that obligation. Failing to list a creditor on the mailing list does not make the debt nondischargeable in a no-asset no-bar-date Chapter 7 bankruptcy because there is no time limit for filing a proof of claim. The federal courts have consistently concluded that in a Chapter 7, no-asset bankruptcy the failure to schedule a debt is immaterial or irrelevant. Reopening a bankruptcy in a no asset Chapter 7 bankruptcy is a pointless exercise because a failure to list does not make the debt nondischargeable. (In re Nielsen (9th Cir. 2004) 383 F.3d 922, 926.)
We conclude that section 523(a)(15) is applicable to this case and requires Harris to pay the Munaretto judgment depending upon the applicability of subsections (A) and (B). That conclusion renders moot Croce's complaint that Harris failed to list her in his petition.
*55 The trial court must consider Harris's current financial circumstances and whether the circumstances are fixed or likely to change in the foreseeable future. The Montgomery court found that the husband had the burden to "demonstrate either that he does not have the ability to pay the debt or that discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to his former spouse." (Montgomery, supra, 310 B.R. at p. 181.) There is no evidence that the trial court considered those alternatives.
If the court finds that the debtor has the ability to pay, the Montgomery court found that the court must consider the equities under the totality of circumstances test, including (a) the income and expenses of both parties; (b) whether non-debtor spouse is jointly liable on the debts; (c) number of dependents; (d) the nature of the debts; (e) the reaffirmation of any debts; and, (f) the non-debtor spouses' ability to pay. The balance of the detriments focuses is upon the economic situation of the parties in their new lives. (Montgomery, supra, 310 B.R. at p. 182, citing Samayoa v. Jodoin (In re Jodoin) (Bkrtcy.E.D.Cal.1996) 196 B.R. 845, 855.)
There is no evidence that the trial court considered whether Harris did or did not have the ability to pay the debt at the time of this proceeding or that discharging the debt would result in a benefit to Harris that outweighs the detrimental consequences to Croce. Nor is there any evidence that the trial court weighed the circumstances of the parties by inquiring into the benefit and detriment to the parties, focusing upon their total economic circumstance in their new lives. (Montgomery, supra, 310 B.R. at p. 182, citing Samayoa v. Jodoin (In re Jodoin), supra, 196 B.R. at p. 855.)
Since the trial court did not consider the factors set forth in section 523(a)(15)(A) and (B), we will remand the case to the trial court to consider the factors set forth above.

4. Writ of Execution

The trial court directed Croce to serve Harris with a writ of execution in the amount owed to the Munarettos with instructions to forward any amount she obtains by the writ directly to the Munarettos.
On remand the trial court's order will depend upon the finding on the issues raised by section 523(a)(15)(A) and (B). If the court finds that the debt in question is excepted under either subsection (A) or (B) of section 523(a)(15), Croce's claim must be rejected; in the event the trial court finds that Harris's debt is not discharged under section 523(a)(15), the trial court must order Harris to pay the Munaretto judgment directly. We reject plaintiffs request that the trial court issue a writ of execution and order the payment be made to Croce. The trial court shall order Harris to make payments directly to the Munarettos under the supervision by the trial court in any way it finds appropriate. Failure of Harris to comply with such an order shall result in appropriate sanctions.

5. Attorney Fees and Costs

The dissolution judgment entered into by the parties expressly provided that they shall pay their own attorney fees and expenses. In the event the trial court finds that the provisions of the original judgment between the parties requires modification as a result of the initiation of this proceeding, it may order attorney fees imposed as to either party under Family Code sections 271 and 2030. The trial court has the discretion to determine appropriate *56 fees to be awarded to the parties incurred at the trial and in the Court of Appeal.

6. Disposition

The judgment is reversed and remanded with directions to the trial court to determine the obligations of the parties pursuant to section 523(a)(15)(A) and (B) and if appropriate to order Harris to commence payments on the Munaretto obligation. If the trial court concludes that Harris does not have the ability to pay the obligations under the agreement of dissolution, the trial court shall discharge Harris of the obligation to the Munarettos.
Each party shall be responsible for his or her own fees and costs.
I concur: KING, J.
RAMIREZ, P.J., Dissenting.
Today the majority holds that the trial court erred when it ordered that respondent Louise Croce (Croce) obtain the amount of $239,129.54 by writ of execution against appellant Sydney Lowe Harris (Harris), with directions that she forward any amounts so obtained to her judgment creditors, the Munarettos, within two weeks of any payment. It concludes that this was error because the trial court was first required to perform a factual analysis under Title 11 United States Code section 523(a)(15), and remands the case to the trial court to engage in that examination. Given the state of the record presented by the appellant and the proper role of this court, I cannot agree with this decision. Therefore, I dissent.
On appeal Harris raises four arguments in support of his claim that the trial court committed reversible error. They include: (1) despite his failure to list his obligation to Croce in his bankruptcy papers, the bankruptcy discharged that obligation; (2) Croce has not been damaged, therefore she has no right to indemnity; (3) because his debt to Croce was discharged by the bankruptcy, she is enjoined by statute from seeking to recover on that debt; and (4) because his debt to Croce was discharged by the bankruptcy, the trial court had no jurisdiction to enter the challenged order. Essentially then, three of Harris's arguments on appeal depend upon his assertion that his debt to Croce was discharged.
Harris claims that his obligation to indemnify and hold Croce harmless from the Munaretto judgment was discharged whether or not he listed her in his bankruptcy papers based upon the authority of two cases decided by the Ninth Circuit, In re Nielsen (9th Cir.2004) 383 F.3d 922, and In re Beezley (9th Cir.1993) 994 F.2d 1433, since his was a no-asset, Chapter 7 petition where no date was set for filing proofs of claim. The majority bases its decision to remand this case on its analysis of this claim and Croce's response to it. However, it omits any reference to Croce's first argument in opposition to this Claim, namely, that it has been waived by Harris's failure to raise it before the trial court.
On the record before us, it appears that Croce's assertion has merit. In his first response to her order to show cause below, Harris asserts not that his obligation to Croce was discharged, but that his duty to pay the Munarettos was discharged by his bankruptcy. In his subsequently filed points and authorities, Harris did not argue that his obligation to Croce was discharged, but rather argued that Croce had sustained no injury and therefore could not seek indemnification from him. With respect to any discharge, he at best vaguely asserts that Croce was aware of his bankruptcy and "did not cho[o]se to oppose the debts discharged." Taken in its context, *57 this argument most reasonably applies to Harris's direct liability to the Munarettos. Harris does not refer to any evidence nor does he cite to any authority for his claim. Similarly, in his final points and authorities contained in the record on appeal, Harris again asserts only that Croce has not been damaged and that she has not demonstrated that the judgment of dissolution can be set aside under Family Code section 2122. Nor does the portion of the reporter's transcript that Harris has provided to this court (it is interesting to note that the entire first day of the trial, which consisted of Harris's testimony, as well as the much earlier hearing at which this issue might have been discussed, have been left out of his designation of the record on appeal) demonstrate that Harris ever asserted that his obligation to Croce had been discharged and therefore the court could not grant her any relief.
In fact the only potential references to Harris's primary contention on appeal that can be found after a thorough review of the record are an assertion raised by Croce, in one of her briefs, that because Harris did not list her right to be indemnified in his bankruptcy and did not inform her of the bankruptcy, the discharge did not apply to her, and two statements by the trial court that it had concluded that Harris's bankruptcy did not discharge his obligation to Croce. Even those references fail to assert anything about a no-asset, Chapter 7 bankruptcy as now claimed by Harris. And, as shown above, there is no indication that Harris ever responded to Croce's argument before the trial court. Nor is there any indication that he challenged the statements made by the trial court on any grounds. If indeed Harris's argument was raised below and was rejected by the trial court, it is his burden to demonstrate that fact by providing an adequate record on appeal. (Barak v. The Quisenberry Law Firm (2006) 135 Cal.App.4th 654, 660, 37 Cal.Rptr.3d 688.) In the absence of an adequate record, the issue must be resolved against him. (Ibid.)
New theories of defense may not be raised for the first time on appeal. (Bardis v. Oates (2004) 119 Cal.App.4th 1, 13, 14 Cal.Rptr.3d 89.) This long held rule is based upon fairness, more specifically the recognition that it would be unfair to both the opposing litigant and the trial court to allow a party to adopt a new theory not explored below. (Mattco Forge, Inc. v. Arthur Young & Co. (1997) 52 Cal.App.4th 820, 847, 60 Cal.Rptr.2d 780.) Although there is a recognized exception to this rule for pure questions of law on uncontroverted records that require no factual determinations, (ibid) it is manifest that this issue does not qualify. Harris has failed to cite to any evidence in the record that would indicate that his was a no-asset Chapter 7 petition to which the cited cases would apply. And indeed, the majority proposes to return the matter to the trial court for the specific purpose of making a factual determination to decide the issue.
In addition, the policies behind the concept of implied waiver are implicated by Harris's silence below. Appellants may be held to have waived a claim of error by failure to take proper steps in the trial court to avoid or cure the error. (Telles Transport, Inc. v. Workers' Comp. Appeals Bd. (2001) 92 Cal.App.4th 1159, 1167, 112 Cal.Rptr.2d 540.) "[F]airness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only *58 subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (JRS Products, Inc. v. Matsushita Electric Corp. of America (2004) 115 Cal.App.4th 168, 178, 8 Cal.Rptr.3d 840.) The trial court should not be required to spend time making factual determinations on remand when it could have make them prior to this appeal if only Harris had properly argued his case.
Because Harris has failed to demonstrate through an adequate record that he argued before the trial court that his obligation to indemnify Croce was extinguished by his discharge in bankruptcy, I would hold that he may not raise the issue for the first time on appeal. Since three of his four arguments depend upon that point, all three would fail, leaving Harris with only one remaining claim: that the trial court erred because Croce has not incurred any damage that would give rise to a claim for indemnity. The majority has apparently rejected this claim without specifically addressing it. Simply put, Harris's argument misses the point. The trial court did not determine that Croce had sustained damages such that Harris's obligation to indemnify her arose. Rather, it determined that the facts supported a finding that Harris anticipatorily breached his contract with Croce. Since Harris has failed to assert that the facts and or law did not support a finding of anticipatory breach, or that the trial court's remedy was inappropriate for such a finding, he has not demonstrated that the trial court erred. His final argument also fails.
For the reasons stated above, I would affirm the judgment of the trial court. In addition to disputing the majority's conclusion as to the ultimate disposition of the case, I disagree with it on a further point. Based upon the apparent dissimilarity of this case to In re Gionis (9th Cir. BAP 1994) 170 B.R. 675, the majority concludes that Title 11 United States Code section 523(a)(5) does not apply to this case as a matter of law. I cannot concur with this determination. In the first place, the court in In re Gionis recognized that "what constitutes support within the meaning of [Title 11 United States Code] section 523(a)(5) implicates a number of factors that are potentially relevant on a case-by-case basis.... [¶].... [¶] While a ... court may consider other factors, these are the primary ones that inform the inquiry in this case." (Id. at p. 682.) Because the Gionis factors discussed by the majority are only potentially relevant on a case-by-case basis, and were specifically identified as those pertinent to that case, they do not necessarily mandate that Title 11 United States Code section 523(a)(5) does not apply to this case as a matter of law.
Further, while the majority is willing to acknowledge that the trial court failed to make the requisite findings under Title 11 United States Code section 523(a)(15), it is inexplicably unwilling to recognize that the trial court also failed to make any findings of fact under Title 11 United States Code section 523(a)(5). Croce did testify that she would not have waived her claim to spousal support absent Harris's promise to hold her harmless from certain of the debts which they at least potentially owed. Because the law requires that the determination whether the obligation was in the nature of spousal support and was therefore not dischargeable in bankruptcy be made on a case-by-case basis, considering a number of potentially relevant factors, the trial court was required to make the appropriate factual findings. (In re Gionis, supra, 170 B.R. at pp. 681-684.)
Consequently, had I not concluded that Harris has failed to provide an adequate record to demonstrate that he raised the *59 no-asset Chapter 7 bankruptcy issue before the trial court, I would remand this case to the trial court with a broader mandate to determine whether Harris's obligation to Croce was not discharged in his bankruptcy because it was either in the nature of "alimony to, maintenance for, or support" for Croce under Title 11 United States Code section 523(a)(5) or fell within the provisions of Title 11 United States Code section 523(a)(15).